*George Patrick Hovarth*, RIB #5683
Hovarth & Hovarth
75 Park Place
Pawtucket, R.I. 02860
(401) 723-9010
email: ghovarthesq@verizon.net
and
*Edward John Mulligan*, RIB #0143
50 Park Row West, Suite 111
Providence, R.I. 02903
(401) 453-3950
e-mail: ejmull@cox.net
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JANE DOE parent and next of friend of MARY DOE, a minor in and for her own behalf and in their own right,<br><br>      Plaintiffs,<br><br>v.<br><br>CITY OF PAWTUCKET, RHODE ISLAND PATTI DiCENSO, SUPERINTENDENT OF PAWTUCKET SCHOOL DEPARTMENT, In her official and individual capacity; PAWTUCKET SCHOOL COMMITTEE and Pawtucket School Committee Members: Gerald Charbonneau, Chairman, Michael Araujo, Joanne Bonollo, Erin Dube, John J. Crowley, Joseph Knight, and Elena Vasquez, in their official capacity; Linda Gifford, School Principal of PAWTUCKET LEARNING ACADEMY, in her official and individual capacity; DAVID MORTON, in his official and individual capacity; THOMAS J. ANDERSON, in his official and individual capacity; KAREN DUBE, in her official and individual capacity; ELIZABETH VELIS, in her official and individual capacity; LEE RABBIT, in her official and individual capacity; KERRI DAY, in her official and individual capacity; SUSAN HALL, in her | No.1: 17-cv-365-JJM-LDA<br><br><br><br><br>3rd AMENDED COMPLAINT AND JURY DEMAND |

1

official and individual capacity;  MICHAELA
FRATTARELLI, in her official and individual
capacity; CHRISTOPHER SWICZEWICZ, in
his official and individual capacity; and Shaun
W. Strobel, Pawtucket City Treasurer; and
unknown Richard and Rita Roes,

Defendants

**THIRD AMENDED COMPLAINT AND JURY DEMAND
ON BEHALF OF MARY DOE A MINOR ETC.**

**INTRODUCTION**

After this matter was filed with this Court, the defense counsel requested a hearing in

connection with educational placement of the Minor Plaintiff.  A hearing was held and an

ongoing ORDER was entered to the effect that the Minor Plaintiff was to be placed in St.

Andrews for the school year, based on the medical reports and the need for the same.  Minor

plaintiff's need for educational private placement has not changed and she continues to remain

enrolled and for the foreseeable future, still remains in the same need for private placement at

St. Andrews.

At the time of the hearing and ongoing ORDER, all of the defendants had representation,

although no formal entry of appearance was filed.

Those counsel have formally entered their appearance and an additional counsel has since

entered her appearance for the School Superintendent.

[Plaintiffs have served all defense counsel with a Rule 26 Initial Disclosure which defendants
have ignored and to which defendants have not responded whatsoever.]

2

## THE PRESENT AMENDED COMPLAINT ALLEGATIONS

THIS CAUSE OF ACTION arises, *inter alia,* from the defendants' deliberate indifference and willful blind eye to student-upon-student sexual assaults and/or rapes on school premises, teacher assault(s), sex-based harassment and hostile environment, discrimination, violation of civil rights, retaliation and state causes of action.

Plaintiffs allege violations of Title IX:  failure to promulgate a Title IX policy in conformity with Title IX; violations of Title VI and Section 504 of the Rehabilitation Act of 1973; denial of equal protection of Minor Plaintiff's civil rights under 42 U. S. C. §1983; retaliation; and for various state actions, such as:  violation of R. I. G. L. § 16-2-17; violation of Minor Plaintiff's right to a safe school, and violations of the sections under Title 16-2; as well as violation of the Pawtucket School Committee's core policy for protection from child abuse; neglect prevention; violation of prompt detection when a child is abused; deliberate indifference; common law negligence, and intentional tort claims.  All as hereinafter shown in this Complaint. Plaintiffs, through counsel, hereby file the following complaint against the defendants captioned above, viz:

## I.    JURISDICTION AND VENUE

1.      This Court has subject matter over this cause pursuant to 28 U.S. C. § 1343 which provides for jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

2.      This Court has subject matter over this cause pursuant to 28 U. S. C. § 1343 which gives district courts jurisdiction over (a) a civil action authorized by law to be brought by any person to redress the deprivation under color of law of any State Law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the Constitution of the United

States or by any Act of Congress providing for equal rights of all citizens within the jurisdiction of the United States; and (b) any civil action to recover damages or secure relief under any Act of Congress providing for the protection of civil rights.

3.      Plaintiff brings this action for and on behalf of her minor daughter to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S. C. § 1681 (a), Title VI and Section 504 of the Rehabilitation Act of 1973; as more fully hereinafter set forth.

4.      This is also an action to redress deprivation of plaintiffs' constitutional rights under the United States Constitution pursuant to 42 U. S. C. 1983.

5.      This is also an action for violations of plaintiffs' rights and injuries under state law, as more fully hereinafter set forth.

6.      Venue is proper before this court under 28 U. S. C. § 1391 (b), all of the defendants reside or resided in this district and/or events giving rise to the claims occurred in this district.

## II.      THE PARTIES

7.      Plaintiffs are all residents of Providence County and are citizens of Rhode Island.  The Minor Plaintiff is an African-American and a member of a protected class, as she is and/or has been regarded and/or treated by the defendants as a child with a disability under Rhode Island Regulations for Identification of Children with Disabilities § 300.8.

8.      Defendant Patti DiCenso ("DiCenso" and/or "superintendent") is the Superintendent for the Pawtucket School Department.  She is a resident of Rhode Island, who is sued in her official and in her individual capacity.[1]

As such superintendent, she is a policy maker and state actor and one of her duties is to prevent

---

[1] Defendants School Superintendent and School Principal are not being sued in the hereinafter Title IX claim in their individual capacity--otherwise they are sued in both capacities.

4

child abuse and neglect and to provide and maintain a safe school, free from any hostile environment.

9.      Defendant Linda Gifford ("Gifford" and/or "principal") is the principal of the Pawtucket Learning Academy ("PLA"), located at 286 Main Street, Pawtucket, which is part of defendant School District.  Similar to defendant superintendent, Gifford, likewise is sued in her official and individual capacity.  As such principal, Gifford is a policy maker and state actor.  Part of her duties is to prevent child abuse and neglect, including sexual molestations, and to provide and maintain a safe school, free from any hostile and discriminatory environment.

10.     Defendant City of Pawtucket ("Pawtucket") is a Rhode Island municipality and it and the PLA are recipients of federal educational funding for PLA and its other schools.

11.     Defendants Gerald Charbonneau, Chairman, Michael Araujo, Joanne Bonollo, Erin Dube, John J. Crowley, Joseph Knight, and Elena Vasquez are residents of Rhode Island.  They comprise the members of the Pawtucket School Committee and each are being sued, as such, in his/her official capacity.

12.     Additional defendants DAVID MORTON; THOMAS ANDERSON; KAREN DUBE; ELIZABETH VELIS; LEE RABBITT; KERRI DAY; SUSAN HALL; MICHAELA FRATTARELLI AND CHRISTOPHER SWICZEWICZ are teachers and members of PLA school staff and/or are PLA personnel.  They are each and all subject to the jurisdiction of this Court.

13.     Defendant Shaun W. Strobel is the City Treasurer for the Defendant City of Pawtucket and is being sued, as such, in his official capacity.

14.     At the time of the filing of this Complaint there still remain unknown Richard Roe and

Rita Roe defendants, and plaintiffs reserve the right, with leave of court, to further amend this

Complaint, upon reasonable discovery of said presently unknown putative defendants.

15.      Minor Plaintiff is an African-American and a disabled person or is treated and/or is

known as a disabled person.  Under federal and/or state law she is a member of a protected class

has life expectancy of another 66.69 years, under the Federal Social Security Actuarial Life

Tables.

### III.     GENERAL DUTIES

16.     The general duties of the defendants relative to the education of their school students,

especially the Minor Plaintiff, are imposed by federal and state law, by written polices, and

procedures applicable to defendants. These duties include, but are not limited to, the following:

"Duty to use reasonable care to protect students from known or foreseeable dangers;

Duty to enact policies that are not in contravention of the Federal Civil Rights Act, 42 U.S.C. section 1983, and the 14th Amendment to the United States Constitution;

Duty to enact policies that are not in contravention of Article 1, sections 2, 5, 23, 24 and Article XII, of Education, Section 1 of the Rhode Island Constitution;

Duty to protect students and provide adequate supervision;

Duty to properly train and continually train teachers, school faculty, youth counselors, mentors, administrators and staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;

Duty to supervise faculty and students and enforce rules, policies, and regulations prescribed for schools, especially PLA, exercise reasonable control over students as is reasonably necessary to maintain order, protect property, protect the health and safety of students and/or maintain proper and appropriate conditions conducive to learning;

Duty to exercise careful supervision and the moral conditions of the school;

Duty to properly monitor and supervise students, to prevent or control harmful situations;

Duty to ensure that personnel are actually on hand and supervising students;

Duty to provide sufficient and adequate supervision to students;

Duty to supervise diligently;

Duty to act promptly and diligently and not ignore or minimize problems;

Duty to refrain from violating Minor Plaintiff's right to protection from restraint or harm, from personal insult and from injury to her personal relations;

Duty to report suspected student abuse;

Duty to prevent discrimination or sexual harassment and/or sexual assault from occurring in public educational facilities;

Duty to promptly investigate and report all actions of sexual abuse against students;

General State General Powers and Duties of School Committees are set forth in R.I. §16-2-9 and are made a part hereof.

In addition, by separate state statute R.I. §16-2-17 the defendants have a duty to protect the rights of the minor, as well as all public school students to a "safe school," which, *inter alia,* is safe and secure, conducive to learning, free from threat, and actual or implied of physical harm by a disruptive student.

Moreover, the defendant school committee, has further set forth its duties under its core belief and commitment of the Pawtucket School Committee, adopted: June 13, 1988, that the Pawtucket School Committee believes, as follows:
* * *
A strong and equitable public education system is central to our democracy and a healthy economy.
* * *
. . .Schools have an enormous impact on children's lives . . .and have a profound impact on every child's life.

. . . We will have a qualified teacher in every classroom and a qualified principal in every school who is an instructional leader.

…We believe all children should be taught in a safe, orderly and secure learning environment.

…We will ensure learning and work environments are safe and secure so that each student and staff member will achieve high levels of performance."

### IV:    FACTS

17.    The defendant superintendent's office is located in the PLA, which is a small two-story former bank building converted into a school.  It is not properly and safely designed to be used and/or to operate as a school for disabled students, ranging from 6 years of age to 22 years of age.

18.    At the time of the incidents involving the Minor Plaintiff, the PLA had approximately 70 to 75 students under its charge.  Unmixed classes (i.e. classes for one grade) had approximately 7 to 10 students and mixed classes (classes with more than one grade, i.e. 7th and 8th grade combined) had approximately 13 to 15 students.

19.    In the school, there were a total of six classrooms.  The school had five bathrooms that were used for students.  And there were or should have been working recording cameras located within five feet or so of the bathrooms.  The school had two entrances, the main entrance located on Main Street (first floor), for students and general admittance and the staff entrance located on the second floor (off the rear parking lot) admissible only by buzzer and not for student use – but for teachers.  There was a recording camera at the main entrance.  Also, there was a recording camera between the math and science area in a stairwell, and one outside the science and English rooms.

20.    Defendant Thomas Anderson ("Thomas") was the only math teacher in the building and he held his classes in the science area while Defendant Susan Hill, a physical science teacher, held her classes in the science area.

21.    The superintendent's office was on the second floor and the principal's office was on the first floor.

22.     There were eight teachers, whose subjects were special education, math, science and English. A school psychologist, Elizabeth Velis, a school social worker, Karen Dube, and a guidance counselor, Michaela Frattarelli, along with the school secretary, Barbara McLaughlin.

23.     Because of the small student body, the students would have common knowledge, sometimes called a "buzz" as to what was happening on a daily basis in the school involving fellow students. The teachers and staff would likewise have a general knowledge of what was "going-on" between and amongst the students. Indeed, the principal would ask other students as to what was going on with the Minor Plaintiff.

**Sexual Molestations of the Minor Plaintiff at PLA**

24.     This matter involves several rapes, sexual assault and molestation, discriminatory, and/or harassment acts and retaliation perpetrated against the Minor Plaintiff, who at the time of these willful, wanton, wrongful, reckless, malicious and/or criminal acts and torts took place at the PLA when and where she was a student in 2016 and 2017, when she was 13 and 14years old. Moreover, such acts were severe, pervasive, objectionably offensive, and also had the direct effect of undermining and being detrimental to the Minor Plaintiff's educational access, resources, benefits, and opportunities and to her health, well being and caused and will continue to cause further harm.

25.     One or more of the sexual assaults and molestations took place, in a hostile environment, during school hours.

26.     At all times material, defendants superintendent, principal and other teachers and/or school personnel, having the authority, power and duty to remediate the same, knew or should have known that the Minor Plaintiff was and had been subjected to sexual assaults and sexual discrimination, but each armed and/or should have been armed with such knowledge, in violation

Case 1:17-cv-00365-JJM-LDA   Document 55-1   Filed 06/20/18   Page 10 of 42 PageID #: 761

of said General Duties, stood indifferent and/or with a willful blind eye and reckless disregard to her plight, danger, and situation, failed to protect her and/or provide her with a required safe school and environment, and/or failed to promptly report the same[2], as required under state law. Rhode Island General Laws, §40-11-3 (1956).

27.     During school hours and divers occasions, co-student(s) would grab at her buttocks, harass her, threaten her, sexually discriminate against her, and make sexual remarks and suggestions to her, while the defendants superintendent and principal and other teachers, with power, authority and duty to take steps and actions to rectify and prevent such acts, assaults and discrimination, stood by, despite having knowledge or ought to have had knowledge thereof, and remained deliberately indifferent and/or remained willfully blind to such acts.

## A.     SEXUAL ASSUALTS AND MOLESTATIONS AT GYM CLASSES

28.     Prior to April 17, 2017, the Minor Plaintiff, then 14 years of age, was subjected to a number of sexual incidents, at or on the way to and from gym classes, during class hours, where she was "butt slapped" and/or groped by male and female students, some of whom were over the

---

[2] When a Member of the School Staff Suspects Child Abuse.

   1.   The Law

   a.    Who Reports:  The duty to report rests with any person who has reasonable cause to know or suspect that any child has been abused or neglected.  In a school setting, this means teachers, aides, principals, custodians, school bus drivers, substitute teachers, secretaries, etc. {40-11-3}.  Reasonable cause may result from any personal observation, admission or response from a child or any communication (even if secondhand or hearsay) which would suggest to a reasonable person that a child has been abused.

   When To Report:  The report must be made within twenty-four hours after reasonable knowledge or suspicion {40-11-3}

   **See, State of Rhode Island: A GUIDE TO IDENTIFYING AND REPORTING CHILD ABUSE IN THE SCHOOLS RHODE ISLAND DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION**

age of 14, which action is a statutorily prohibited crime under R.I.G.L. §1-37-8.3.  Under Rhode Island law, crimes give rise to civil tort actions.

29.     These prior sexual assaults and molestation led to an atmosphere of sexuality, where male students felt empowered to sexually assault female students, such as the Minor Plaintiff. Because the defendant school and it's personnel, armed with knowledge of such sexual assaults, failed to properly address the issue and where, at that time and until the filing of this lawsuit, the defendant City and the defendant school department failed to designate, train and empower a Title IX coordinator, as required under Title IX; completely failed to train appropriate personnel consistent with industry standards as to Title IX; on how to stop sexual harassment; how to prevent it's recurrence and/or remedy it's affects; lack of training on reporting obligations; the nature of sexual assault; working with minors and sexual assaults; appropriate school-based investigations and resolution mechanisms; and supporting victims and working with law enforcement.

30.     On or about April of 2016, a male gym student simply got behind Minor Plaintiff, and simulated sexual fornication by rubbing his genitalia area against the Minor Plaintiff's clothed anal area, in front of the gym teacher and class.  At that time, she and/or the school contacted the police.  However, the gym teacher and the defendant superintendent and principal, knowing of the incident, failed to take any action to comport with Title IX and/or state law and/or City Policy for a safe school and protection of the Minor Plaintiff.

31.     Defendants superintendent and school principal had or should have had knowledge of this sexual assault, as well as other sexual assaults referenced herein.  However, neither the defendant school superintendent, the defendant school principal nor any person affiliated with the defendant school, who had knowledge or should have had knowledge – but for the willful blind-

eye and intentional disregard of the same – willfully failed to notify the Minor Plaintiff's parents or the Minor Plaintiff herself of any investigation in this regard or any punishments or orders imposed that directly related to the minor victim.

**May, 2016 - RAPE BY 17-YEAR-OLD STUDENT AT PLA**

32.     In 2016, 17-year-old PLA student, Adriel Xxxx, ("Adriel"), was at all times herein, a friend of Ivander DeBurgo ("DeBurgo"), a PLA older student.  At that time, and at all times material, DeBurgo wore an ankle bracelet, imposed on him by the Family Court, which he would "charge" frequently in front of PLA students and teachers and members of the staff.  DeBurgo was also known to have supplied marijuana to PLA students.  And he and Adriel would smoke marijuana joints and/or blunts (cigars filled with marijuana) at or near the PLA, and this was known by PLA students and was known or should have been known by members of the school staff.

33.     Sometime around the early or middle part of May, 2016, Adriel, then 17 years of age, simply walked into the mixed math class, consisting of about 15 students, one of whom was the Minor Plaintiff, sat next to another 17-year-old female student ("H") and first talked about "smoking" after school.  The teacher took no steps to intervene.

34.     Next Adriel and H started to talk to the 13-year-old Minor Plaintiff.  They said to her "Let's take a walk."  The teacher took no action.  Next, the two 17-year-old PLA students, Adriel and H, and the 13-year-old Minor Plaintiff got up and walked out of the class, into the hallway.  The teacher did nothing.  Nor did any other members of the school staff, who were in a position to see the 13-year-old Minor Plaintiff and the two 17-year-old students nor did anything to stop or question them as they walked out of class into the hallway.

Case 1:17-cv-00365-JJM-LDA   Document 55-1   Filed 06/20/18   Page 13 of 42 PageID #: 764

35.     As they were walking to the bathroom in the hallway, where there was a recording camera which should have been working and recording the event, Adriel pushed, guided and/or forced the Minor Plaintiff into the bathroom, where he began to touch the Minor Plaintiff on her buttocks and vaginal area and later, pulled her pants down, forced her over the sink and raped her.

36.     Later that day, Adriel bragged to his brother, who was also a PLA student of his "conquest" of the 13-year-old Minor Plaintiff.  Adriel's brother spread the tale of what his brother did to the Minor Plaintiff all over the school.

37.     Upon information and belief, DeBurgo would have learned of the sexual molestation of the Minor Plaintiff from Adriel and/or Adriel's brother or from the "buzz" from the other students going around the school.

38.     The following day, Principal Gifford removed the Minor Plaintiff from class and asked her outside of the classroom: "I heard you had sex with Adriel?"  Plaintiff, being caught off guard, responded: "Yes."  The defendant principal, upon information and belief, took no further steps, did not inquire as to whether it was protected or unprotected sex, was she hurt, did she need counseling, or even reported the matter, but merely stood by with complete indifference and took no steps to secure and preserve the recorded footage on the camera outside the bathroom. In the ordinary course of her duties and obligations, the defendant principal should have informed the defendant superintendent, and defendants assistant superintendent and principal, as well as the school's social worker, psychologist, and counselor of that event in order to protect the Minor Plaintiff and watch out for her since 13-year-old females are known to be at risk and susceptible to 17 and 18-year-old males for sexual molestations, and such school personnel should have had training in this area.

**June 7, 2016 - RAPE BY ADULT PLA STUDENT IVANDER DEBURGO**

39.     On or about June 7, 2016, approximately one month after the known rape of the 13-year-old Minor Plaintiff referenced in ¶ 32-28, a more serious sexual assault and battery with threats by DeBurgo – the rape of the Minor Plaintiff, was committed on her when she was still 13 years of age.  DeBurgo, who was an adult co-student and the perpetrator and who should not have been in the school at that time, which was well-known to the teacher on duty, defendant math teacher Anderson and the school secretary, Barbara McLaughlin, especially when they know that the Minor Plaintiff's father was coming to pick her up after school, around 3:30 p.m. and that she was in need of protection and a safe and secure school.

40.     Moreover, DeBurgo was well-known to the defendant school, the defendant school superintendent, the defendant school principal and the remaining defendants and other school personnel to be a violent person, who earlier had disrupted Pawtucket school classes and attacked a school security official and who was sexually and inappropriately active toward female students.  He was known to deal in drugs and was not allowed to be on the premises after regular school hours or should not have been allowed in the school premises after regular school hours.

41.     In short, DeBurgo was a danger to the Minor Plaintiff and other minor students, who would legitimately be on said school premises after regular school hours and said defendants and teachers on duty, with the power and authority and duties to take corrective actions to protect all minor students then legitimately on the premises, with deliberate indifference did little or nothing to protect them from DeBurgo or the likes of DeBurgo, or to have earlier taken necessary steps to have DeBurgo removed from the school, until such time as it could be shown, if at all, that DeBurgo was no longer a danger and threat and predator to the safety of female students.

42.     Indeed, DeBurgo had raped another minor female student, then approximately 13 years of age, on the school premises, and during school hours.  This incident was known to other students and the Minor Plaintiff, because that 13-year-old student had earlier told the Minor Plaintiff and, upon information and belief – other students, that she had sex with DeBurgo and this was known or should have been known by school personnel, who had the duty and power and authority to take corrective actions to protect the safety of the Minor Plaintiff and other minor students--but, defendants and other presently unknown members of the defendant school and school department, with such power and authority, took no required corrective action to protect students from the rapist DeBurgo and to have him removed from the school and referred the matter to the police.  Notwithstanding the fact that defendants knew or by turning a willful blind eye and/or with deliberate indifference should have known that DeBurgo was a "ticking time bomb," to the safety and security of the Minor Plaintiff and other minor females.

43.     DeBurgo had first left the school premises when school had let out that afternoon, around 2:20 p.m. and he next attempted to gain re-entry into the school, but he was told to leave by the defendant principal or one or more of the teachers in charge and/or the resource officer, all of whom had the power, authority and duty to immediately remove him from the school premises but failed to do so.

44.   From and after 2:20 p.m., the Minor Plaintiff and two other students were the only students allowed to be on the school premises and they were all in defendant Anderson's math class.  At or about this time, Barbara McLaughlin would have locked and secured the Main Street entrance – which was the only way into the school – except by buzzer entrance on the second floor by teachers.

45.     Around this time and several times thereafter, DeBurgo came into defendant Anderson's class and tried to lure and/or entice the Minor Plaintiff out of the classroom and was talking with the Minor Plaintiff.

46.     Upon information and belief, DeBurgo had known of the rape of the 13-year-old Minor Plaintiff by his "smoking partner", Adriel. DeBurgo, who had earlier raped another 13-year-old PLA student was interested and had planned on seducing and having sex with the 13-year-old Minor Plaintiff.

47.     Defendant Anderson, seeing DeBurgo, told him to leave but did nothing else, and DeBurgo simply ignored him.

48.     At approximately 3:15 or 3:20 p.m., school secretary Barbara McLaughlin came into Anderson's class room and asked if he saw the Minor Plaintiff because her father was coming to pick her up in ten minutes – at 3:30 p.m.

49.     Anderson replied that she had just left and that he thought she was going to see McLaughlin.  At that point, McLaughlin went to look for the Minor Plaintiff and Anderson remained in his class.  Anderson had no idea whether DeBurgo and the Minor Plaintiff had left together.

50.     Sometime shortly before 3:30 p.m. the subject rape by the perpetrator DeBurgo took place at the defendant school, after school had let out while DeBurgo had no right to be on the school premises, and after having been told to leave the premises.

51.     After school had let out, the premises should have been locked down and/or secured from entry by unauthorized persons, especially by DeBurgo.

52.     Indeed, the defendant school and defendants at the time of the event and all times material, failed to have in place and in operation a security system and trained personnel, to prevent entry by unauthorized persons such as DeBurgo and others, after school hours.

53.     At that time, when DeBurgo gained unlawful entry, the remaining school officials on duty knew or should have known that DeBurgo had wrongfully re-entered the school premises. Such school officials knew full well or should have known that DeBurgo was a danger and a sexual predator having no right to be on the premises, after the school had closed; and that they were obligated and required to take all reasonable steps and actions to remove him and prevent him from remaining on the school premises.

54.     At that time, the school and the school principal intentionally, deliberately, indifferently, and/or knowingly allowed DeBurgo to gain access into the school.  And the school teacher on duty and/or person assigned to be on duty and/or in charge failed to supervise the premises and protect the Minor Plaintiff, knowing or should have known that DeBurgo had earlier raped another minor female student, who was then 13 years of age, and that DeBurgo was a sexual predator of minors--who should not have been allowed on the school premises or anywhere near the school or anywhere near any of the female students.

55.     After gaining re-entry, DeBurgo was not stopped, removed, or prevented from freely roaming about the premises, despite the Minor Plaintiff and other students being lawfully on the premises who were entitled to a safe and secure premises, free from the likes of DeBurgo.

56.     At or about this time, the Minor Plaintiff had to use the lavatory and informed the teacher and/or school secretary on duty of the same and asked what time her dad was coming to pick her up, and after being told at "3:30," she left the room.

57.     Shortly, around this time, while the Minor Plaintiff was using the lavatory or bathroom, DeBurgo, who was known or should have been known to have gained re-entry by school personnel, was still unlawfully in the school; he opened the lavatory door, forced the Minor Plaintiff on the sink, held her arm down, pulled some of her clothing down, and forced penile vaginal penetration.

58.     At or about this time, the school secretary, went back to the math room to see how many students were there and did not see the Minor Plaintiff and then, asked Mr. Anderson, where the Minor Plaintiff was.

59.     Mr. Anderson said that she had already left.  He also asked her if DeBurgo was still in the building.

60.     At this point, the school secretary decided to search the building for the Minor Plaintiff, while Mr. Anderson remained in the math room.

61.     The school secretary started with the bathrooms off the math room, which should have been seen and/or observed by Mr. Anderson.

62.     The school secretary attempted to gain entrance and found not only that the door was locked, but that there was a "lot of scuffling going on" and she started "banging on the door."

63.     At that time, DeBurgo had just raped the Minor Plaintiff, and upon hearing the banging on the locked door, DeBurgo threatened the Minor Plaintiff, telling her to "hide herself" and threatening her with: "You better keep quiet, keep your mouth shut or you'll have to deal with the kids from Prospect."

64.     DeBurgo then shouted through the locked door, to "hold on, I was taking a sh**," as he opened the door.

18

65.     The school secretary would later state that "out of the corner of her eye, she saw something" and when "she looked," she saw the Minor Plaintiff "hiding under the sink with the trash basket in front of her."

66.     Despite her observations and having heard the scuffling in the lavatory no steps were taken by the school secretary or by Mr. Anderson, who was nearby, to investigate what had happened, to protect the Minor Plaintiff, to separate her from DeBurgo or to contact the police.

67.     However, the school secretary, merely walked DeBurgo and the Minor Plaintiff to the front door and allowed them to leave. Later, that day, at 3:55 PM, she advised defendant Principal Gifford by e-mail of the event.  By information and belief, defendant Gifford contacted Lee Rabbit, at 6:30 p.m., but the text of that message has been redacted from the Minor Plaintiff's school files.

68.     Upon information and belief, defendant school superintendent was also informed of the rape events, that afternoon, and also spoke with defendants assistant superintendent Rabbit and assistant school principal Swiczewicz and they conspired as to the best way to keep the matter quiet and to protect the school and themselves, and despite the state reporting system being available 24 hours a day for reports of these types of abuse and sexual molestations – did not report the same as required by said state reporting statute.

69.     At that time, Pawtucket, PLA school and the defendants school  superintendent principal and assistant principal intentionally, deliberately, indifferently,  failed to have in effect properly trained teachers, personnel, and Title IX coordinator(s) to deal with the prevention of sexual assaults and harms by DeBurgo  and others like him being on the premises and/or to properly investigate and report such rapes and sexual assaults and sexual discriminations and to

immediately take the minor to a hospital in connection with her safety and rape and to take immediate steps to arrange for counseling and her protection.

70.     The following morning, the Minor Plaintiff, who had been placed under escort was crying uncontrollably, when defendant, Karen Dube, a school social worker informed her that "she had the right to put her concerns in writing."

71.     The Minor Plaintiff said she couldn't because "DeBurgo is 18 and if he gets locked up, there will be 10 girls from Prospect Heights looking for her" and she "doesn't want that."  And that one of DeBurgo's "go-betweens, who she named but who's name the defendants have redacted--despite the fact that person was aiding and abetting DeBurgo in threatening the minor and, in effect, extorting her, and told her "that she has to take all of the blame for this because he is 18 and not looking to get locked up."  Defendant Dube, despite knowing that the 13-year-old Minor Plaintiff had been threatened by DeBurgo, as related by PLA student Tyler, who was a friend of DeBurgo, took no steps to see to the Minor Plaintiff's safety or to report or to ensure that she obtained proper treatment and counseling and merely stood deliberately indifferent to her plight.  But instead, carefully watched and monitored the Minor Plaintiff in order to discredit her.

72.     Despite having this knowledge, defendants have not undertaken any proper or required investigation, or reported Tyler, this "go-between" and "aider and abettor" to the police or any proper authority, further continuing to violate the Minor Plaintiff's educational and constitutional rights.

73.     The following day, the Pawtucket Police Department, in accordance with City and School policy, interviewed the Minor Plaintiff, without the consent of her parents and outside of their presence or that of an attorney, took a written statement from the Minor Plaintiff, without

giving or providing a copy to her or to her parents, or even to her present attorney, notwithstanding, upon information and belief, that the defendant school superintendent and others were given copies of the same. After this rape, members of the school staff have been tracking the activity of the Minor Plaintiff's computer.

74.    DeBurgo has been found guilty of the rape and the sexual molestation crime against the Minor Plaintiff, by the Providence Superior Court; and he has been found to be a sexual predator who was sentenced to a 25-year prison term, with ten years to serve and 15 years suspended, along with registration as a sex offender and a no contact order.

75.    The police, with the consent of DeBurgo, have obtained his "smart" phone, where there are the recorded calls and messages to the Minor Plaintiff by and between DeBurgo and Tyler, which were recorded after the rape.  In addition, there are recordings confirming that DeBurgo is a drug dealer and is sexually active with younger females.

76.     It is also known or should have been known by the defendants, jointly and severally, that it is a common, unchecked, and untoward and ongoing practice by male students at the PLA to subject female students to lascivious sexual requests and salacious remarks, creating a hostile atmosphere to female students, including the Minor Plaintiff.

77.    As a direct and proximate result, the Minor Plaintiff has been sexually and physically compromised, suffered emotional distress, post-rape traumatic syndrome, post traumatic syndrome, has needed medical care and attention, needed to be transferred to a school system outside of the Pawtucket School System and remains in such need for her further protection and to protect her right to and adequate and safe education from this rape and other sexual touching, together with the failure to provide her with a safe and secure education and educational facility.

And that these events will continue to plague and follow her into the future and she has been otherwise injured.

**TEACHER ON STUDENT SEXUAL MOLESTATION AND ASSAULTS**

78.   On April 7, 2017, another incident of second degree sexual assault took place at PLA, involving David Morton, a PLA school teacher and the Minor Plaintiff.  It occurred around lunch time in the school hallway, near the cafeteria, where defendant Morton had been behind the Minor Plaintiff who was riding "piggy back" with another student, when Morton came up from behind her and smacked and grabbed her butt, a sexual area prohibited under the foregoing statute.

     **a.**     **Prior sexual assaults by David Morton on school children:**

The defendant school, defendant superintendent DiCenso, defendant principal Gifford, assistant principal Swiczewicz, defendant assistant school superintendent Rabbit know or with deliberate indifference turned a blind eye to defendant Morton's known sexual proclivities, where the defendants had beforehand knowledge from 14 and 15-year-old female students that:

   i.   Sometime in early February, before he sexually assaulted the Minor Plaintiff, Morton was seen by another teacher in the science room at the high lab table touching and tapping the inner thigh of a student.  This was not reported to the Pawtucket Police Department until some two months later.

   ii.   Before the incident with the Minor Plaintiff, Morton, while in another teacher's class, was known to tap and touch high on the thigh of a 15-year-old female student who had a sister who was also a minor PLA student, and as he touched her high on her thigh said he would have sex with her and her sister.

iii. The defendant school superintendent, assistant superintendent, principal and assistant principal and teacher Anderson had, for some time, known of these incidents, but deliberately failed to contact the police department and/or report these incidents as required by law, and are not, at present, known to have made contemporaneous recordings or memos as to the foregoing, of which information was obtained by the Police in May of 2017.

iv. Again, on several times before the incident with the Minor Plaintiff, Morton touched and tapped the inner thigh of another 14 or 15-year-old student at PLA, who stated the last time it happened in March of 2017.

v. Another 14-year-old student who had transferred to PLA, before the incident with the Minor Plaintiff by Morton, stated that when she first came to PLA, Morton not only showed her how to use the computer and helped her with her tests, but also would tap and touch her upper thigh, and in addition, touched her breasts.  On another occasion, at or about that time, when she was standing at a door in front of a classroom where Morton was speaking with a male PLA student, overheard that student stating he wanted F—K the twins, to which Morton then asked that student if he "needed help."

**b.      Forcing the Minor Plaintiff to be in the same room with Morton – who sexually assaulted her**

On the day of the assault of the Minor Plaintiff by Morton, assistant principal Swiczewicz, in connection with her complaint, over her objection, forced the Minor Plaintiff to be in the same room with Morton – who had just assaulted her.

### c.      Prior Contact with Morton:

Prior to this incident, when the Minor Plaintiff was in class, Morton would come into class and either sit between her and another female student or would remain standing in front of her and another student.  The class teacher took no action while this was going on.

### d.      Morton Cover-Up

i.      After the Minor Plaintiff filed her complaint against Morton, and while the defendants and the police were well aware of Morton's "trac-record" with minor students at PLA, the Minor Plaintiff heard nothing about the progress of her filed criminal complaint.

ii.      In October, well after this suit was pending, the Minor Plaintiff learned for the first time that Morton had been charged – but not with the required charge of second degree sexual assault – but with a simple assault charge – a misdemeanor.

iii.      City Solicitor Frank Milos, as Pawtucket's prosecutor, has no authority to charge and prosecute felonies, such as second degree sexual assault, which, in this case, was the mandatory charge in the first instance.

iv.      Knowing that this suit against the City of Pawtucket and its teachers was pending in this Court, and knowing or should have known that he and the City had a conflict of interest in this matter, upon information and belief, in order to limit suit damages and control the prosecution, wrongfully brought a simple assault charge – over which he would have had prosecutorial discretion and control and, in effect, deny the Minor Plaintiff access to the court for redress and justice, thereby obstructing the Minor Plaintiff's right to justice and access to the courts.

**COUNT NO. ONE:  VIOLATION OF TITLE IX, 20 U. S.C. § 20 1681, et seq.**

79.     Paragraphs 1 through 78 are incorporated and made a full part hereof harassments and assaults, resulted in the Minor Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of said Title IX.

80.     The foregoing sexual harassment and molestations and discrimination was so severe, pervasive and objectively offensive that it deprived Minor Plaintiff of access to educational opportunities provided by the school.

81.     Defendant School District created and/or subjected and continued to subject the Minor Plaintiff to a hostile educational environment in violation of said Title IX, because she:

> a)  was a member of a protected class;
>
> b)  was subjected to sexual harassment in the form of sexual molestation and sexual assaults by other students;
>
> c)  was subjected to sexual harassment based on her sex; and
>
> d)   was subjected to a hostile environment created by the School District and its official actual knowledge of the sexual assault(s) and subsequent harassment created by its failure to investigate and discipline in a timely manner consistent with its own policy and federal and state law.

82.     Defendant School District failed to promptly and appropriately respond to the sexual harassments and assaults, which resulted in the Minor Plaintiff, on the basis of her sex, being excluded from participation in entitled educational benefits and being subjected to discrimination in the defendant's education program in violation of said Title IX.

83.     Defendant School District failed to take immediate and effective remedial steps, notwithstanding their power, authority, obligation and duty to resolve and rectify the sexual

harassment and sexual assaults of the Minor Plaintiff, but instead acted with deliberate indifference and intentional willful blindness toward the Minor Plaintiff.

84.   This policy and/or practice and/or failure to act constituted disparate treatment of female students, especially the Minor Plaintiff.

85.   Because of the Minor Plaintiff's disability from the rape and fear of further harm and damage to her and to her right to a safe and secure education, the Plaintiffs, through counsel have requested, and continued to request reasonable accommodation to prevent further harm, injury and interference with the Minor Plaintiff's right to a safe and secure and educationally sound school, at such a school, outside of the district public school and/or to a private school; especially where the City and defendants had been unable to accomplish such a transfer to an outside public school system, prior to said Court order.

86.   Defendants have jointly and severally disregarded and/or remained deliberately indifferent to any reasonable accommodation.

87.   The Minor Plaintiff has suffered emotional distress and psychological damage, post traumatic syndrome, and other injuries as a direct and proximate result of defendant School District's deliberate indifference to her rights under Title IX.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued, for this count only in their official capacity as follows:

A.   Compensatory damages for the Minor Plaintiff's emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries, in the amount of Three Million Five Hundred Thousand Dollars.

B.   Exemplary and/or punitive damages.

C.  Statutory damages.

D.  Costs and interest.

E.   Reasonable Attorney fees.

F.    Continuation of transfer to an outside Private School and/or damages for the failure to

 make and/or have made a reasonable accommodation and/or other equity relief.

G.   Other relief as the circumstances may deem mete.

## COUNT NO. TWO:   VIOLATION OF TITLE VI

88.     Paragraphs 1 through 87 are incorporated and made a full part hereof.

89.     Said acts and events constitute violation of Title VI.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment

against the defendants, jointly and severally and against the defendants sued individually, as

well, as follows:

A.   Compensatory damages for Minor Plaintiff's emotional distress and psychological

damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries,

in the amount of Three Million Five Hundred Thousand Dollars.

B.  Exemplary and/or punitive damages.

C.  Statutory damages.

D.  Costs

E.   Reasonable Attorney fees

F.    Continuation of Transfer/placement to an outside Private School and/or damages for the

failure to make and/or have made a reasonable accommodation and/or other equity relief.

G.   Other relief as the circumstances may deem mete.

## COUNT NO. THREE:   VIOLATION OF SECTION 504 REHABILITATION ACT

90.     Paragraphs 1 through 89 are incorporated and made a full part hereof.


WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued individually, as well, as follows:

A.   Compensatory damages for Minor Plaintiff's emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries, in the amount of Three Million Five Hundred Thousand Dollars.

B.  Exemplary and/or punitive damages.

C.  Statutory damages.

D.  Costs and interest.

E.   Reasonable Attorney fees.

F.    Continuation of transfer/placement to an outside Private School and/or damages for the failure to make and/or have made a reasonable accommodation and/or other equity relief.

G.   Other relief as the circumstances may deem mete.

## COUNT NO. FOUR:  1983 VIOLATION 42 U. S. C. § 1983

91.     Paragraphs 1 through 90 are incorporated and made a full part hereof.

92.     Under the Fourteenth Amendment, the Minor Plaintiff has the right as a public school student to personal security and bodily integrity and Equal Protection of the Laws.

93.     Defendants each and all deprived the Minor Plaintiff of her substantive due process rights under the Fourteenth Amendment and to due process by failing to protect her from physical, sexual, mental, and emotional abuse, aforesaid.

94.     Individual school superintendent, individual school principal, and presently unknown individual defendants, and defendant City of Pawtucket, all of whom are sued in their official and individual capacities, and school committee defendants all of whom were state actors acting under color of state law and pursuant to established custom and/or policy.

95.     All defendants, acting under color of law, each subjected the Minor Plaintiff to violation of her right to personal security and bodily integrity and Equal Protection of the laws by: failing to investigate; failing to prosecute; failing to properly discipline; failing to keep said premises safe and secure; failure to adequately train and supervise school defendants and personnel; and/or manifesting deliberate

indifference and/or intentional willful blind eye to the foregoing sexual assaults and sexual harassment and sexual discriminations which were carried out in an illegal, improper, and impermissible manner and in violation of said duties and General Duties in impermissible manners, which were egregious, outrageous, or fraught with unreasonable risk and harmed the Minor Plaintiff, who was a member of a particular, limited, closed group, mainly females at said PLA.

96.     Such conduct and/or failure to act shocks the conscience.

97.     The City of Pawtucket, its School District, said School Committee, defendants superintendent and principal and presently unknown defendants have and/or had unconstitutional customs or practices or policies of (a) failure to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right of personal security and bodily integrity and (b) failure to adequately train and supervise School District Employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity and Equal Protection

of the Laws.

98.     Upon information and belief, the School District, Pawtucket School Superintendent and said School Principal and presently unknown Richard and/or Rita Roe defendants, individually and officially followed these unconstitutional customs and policies not only in regard to the Minor Plaintiff, but also with regard to criminal and tortious misconduct committed against other School District students.

99.     The said policies and/or practices instituted and/or allowed to be omitted by the defendant School Superintendent and defendant PLA School Principal constitute disparate treatment on female students and, more particularly to the Minor Plaintiff.

100.    Defendants City of Pawtucket, School Superintendent, PLA School Principal and School Committee members are and/or were at the time (s) of event(s) complained of policy makers for the purpose of implementing the School District's and/or PLA's unconstitutional policies or customs.

101.     Such conduct and failure were intentional, reckless, willful, and done with callous disregard for the Minor Plaintiff's constitutional rights and with deliberate indifference.

102.    The Minor Plaintiff has suffered emotional distress and psychological damage, post traumatic syndrome and other injuries as a direct and proximate result of defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued individually, as well, as follows:

A.   Compensatory damages for Minor Plaintiff's emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries,

in the amount of Three Million Five Hundred Thousand Dollars.

B.  Exemplary and/or punitive damages.

C.  Statutory damages.

D.  Costs and interest.

E.   Reasonable Attorney fees.

F.   Continuation of transfer/placement to an outside Private School and/or damages for the

failure to make and/or have made a reasonable accommodation and/or other equity relief.

G.  Other relief as the circumstances may deem mete.

## COUNT NO. FIVE:   FAILURE TO TRAIN AND SUPERVISE AND/OR
## MUNICIPAL INACTION (42 U. S. C. § 1983)

103.    Paragraphs 1 through 102 are incorporated and made a full part hereof.

104.    Defendants School Superintendent and PLA School Principal were state actors

working for the Pawtucket School System, a federally funded school system.

105.    Said defendants were acting under color of law in failing to respond to said

sexual assaults on school premises.

106.    Defendants School Superintendent and PLA School Principal failed to preserve the

Minor Plaintiff's right to equal protection as guaranteed by the Fourteenth Amendment.

107.    Under the Equal Protection of the Fourteenth Amendment, the Minor Plaintiff has a right

to equal protection to equal access to an educational environment free from harassment

and discrimination as guaranteed by the Fourteenth Amendment.

108.    Defendants School Superintendent and PLA School Principal should have known

their responses to the aforesaid sexual assaults allegations must comply with Title IX's

promulgated implementing regulations.

109.   Defendant Pawtucket School System violated the Minor Plaintiff's Fourteenth Amendment rights by failing to properly supervise and train its employees in mandated investigative requirements and to provide a safe and secure environment and/or by municipal inaction.

110.   The Minor Plaintiff has suffered emotional distress and psychological damage, post traumatic syndrome and other injuries as a direct and proximate result of defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued individually, as well, as follows:

A.   Compensatory damages for the Minor Plaintiff who has suffered emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries, in the amount of Three Million Five Hundred Thousand Dollars.

B.   Exemplary and/or punitive damages.

C.   Statutory damages.

D.   Costs and interest.

E.   Reasonable Attorney fees.

F.   Continuation of transfer/placement to an outside Private School and/or damages for the failure to make and/or have made a reasonable accommodation and/or other equity relief.

G.   Other relief as the circumstances may deem mete.

## COUNT NO. SIX:   RETALIATION

111.   Paragraphs 1 through 110 are incorporated and made a full part hereof.

Case 1:17-cv-00365-JJM-LDA   Document 55-1   Filed 06/20/18   Page 33 of 42 PageID #: 724

112.     Defendant School Superintendent and/or defendant School Principal and/or defendant School Committee and others acting by and/or through their attorney retaliated against the plaintiffs for seeking to bring this action and in bringing this action, as follows:

a)       By dragging out the issue of school placement;

b)       By agreeing on the one hand to look into the issue of placement, while on the other hand having no intention to agree to placement;

c)       By failing to take reasonable steps to accommodate the Minor Plaintiff's need therefor.

d)       By seeking to delay the making of reasonable accommodation with the idea of insuring that it would be too late for the Minor Plaintiff to obtain placement at a private school, basically a "running out the clock" type of act.

e)       By giving the Plaintiffs the false hope that defendants were serious as to private placement and agreeable to placement and in the interest of the Minor Plaintiff, when there was no such agreement--or illusory and acting in bad faith, with the objective and/or aim of making it difficult or almost impossible to obtain needed placement due to their recalcitrant and/or clock-stopping methods.

f)       Even after the Minor Plaintiff was finally able to obtain placement, defendants dragged their feet and/or failed to promptly and reasonably obtain the needed books and transportation for the Minor Plaintiff, with the intent, design, and/or result of not only making it extremely difficult for the Minor Plaintiff to be able to keep up with school work but, in effect, seeking or causing her to fall seriously behind in her required studies, which would also result in substantial savings to the defendants.

g)       And in further retaliation, in connection with the Minor Plaintiff's request for her transcript, have delayed for several months the turn-over of the same, and was recently produced

were not all of the requested records, were presented in a jumbled mess and out of order, severely redacted and made unreadable--with the intent to prevent needed information for this law suit, in effect, hiding or distorting evidence.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued individually, as well, as follows:

A.   Compensatory damages for plaintiffs in the amount of Three Million Five Hundred Thousand Dollars.

B.   Exemplary and/or punitive damages.

C.   Statutory damages.

D.   Costs.

E.   Reasonable Attorney fees.

F.    Other relief as the circumstances may deem mete.

### COUNT SEVEN – Title IX – 20 U.S.C. §1681 *et seq.* RETALIATION

113.    Plaintiffs incorporate by reference herein and realleges the allegations in Paragraphs 1 through 112 above as though set forth fully herein.

114.    The Minor Plaintiff engaged in actions protected by Title IX when she filed this complaint, containing the allegations contained therein, regarding unlawful discrimination, including sexual assaults, batteries and rapes inflicted upon her.

115.    Because of the Minor Plaintiff's protected actions in bringing this suit under Title IX and under her rights to redress through and to have unfettered access to due process and equal process, the defendant City, acting through its attorney retaliated against the Minor Plaintiff by

for bringing this action, in order to limit its damage and exposure in this pending lawsuit. Furthermore, its efforts to reduce or cover-up the violation of the Minor Plaintiff's by second degree sexual assault by Morton to a misdemeanor when the proper charge was a second degree sexual assault, the facts called for a second degree sexual assault, a felony and the reduction of the charge to a misdemeanor was an obstruction of the Minor Plaintiff's rights for redress and justice.

116.    As a result of defendant City's unlawful retaliation against the Minor Plaintiff, in violation of Title IX, the Minor Plaintiff has suffered, and continues to suffer loss of education opportunities and benefits, injuries, damages and losses, including, but not limited to emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and damage to ad delays in her pursuit of education.

WHEREFORE, the Minor Plaintiff, through her mother and next of friend, demands judgment against the defendants, jointly and severally and against the defendants sued, for this count only in their official capacity as follows:

A.   Compensatory damages for the Minor Plaintiff's emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries, in the amount of Three Million Five Hundred Thousand Dollars.

B.  Exemplary and/or punitive damages.

C.  Statutory damages.

D.  Costs and interest.

E.   Reasonable Attorney fees

F.    Continuation of transfer to an outside Private School and/or damages for the failure to make and/or have made a reasonable accommodation and/or other equity relief.

G.   Other relief as the circumstances may deem mete.

## PENDENT STATE CLAIMS (ALL DEFENDANTS)

## COUNT NO. EIGHT:  FAILURE TO HAVE SAFE SCHOOL

117.    Paragraphs 1 through 116 are incorporated and made a full part hereof.

118.     R. I. G. L. § 16-2-17 mandates that defendants have duty to provide a "safe school" to the Minor Plaintiff, and in addition to the common law duty to provide a safe school and protect the Minor Plaintiff.

119.    Defendants, jointly and severally, are in breach of said duty and failure to provide a safe school to the Minor Plaintiff.

120.    As a direct and proximate result of said negligence and failure, the Minor Plaintiff was raped and was sexually assaulted.

121.    As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment, interference with right to education, and other injuries.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, reasonable attorney fees, state statutory interest and costs and such other relief as the circumstances deem mete.

## COUNT NO. NINE:   INTENTIONAL AND/OR WILLFUL INDIFFERENT
## FAILURE TO HAVE SAFE SCHOOL

122.    Paragraphs 1 through 121 are incorporated and made a full part hereof.

123.    Said defendants' joint and several breaches of said duty are tantamount to intentional and deliberate and willful indifference in failing to provide a safe school to the Minor Plaintiff.

124.    Said intentional, deliberate and/or willful indifference warrant the imposition of punitive

and/or exemplary damages.

125.   Said intentional, deliberate and/or willful indifference warrant the imposition of reasonable attorney fees.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages, for punitive and/or exemplary damages, reasonable attorney fees, state statutory interest and costs and such other relief as the circumstances deem mete.

## COUNT NO. TEN:  FAILURE TO PROTECT PLAINTIFF FROM THIRD PARTY ACTS

126.   Paragraphs 1 through 125 are incorporated and made a full part hereof.

127.   Defendants have a common law duty to protect the Minor Plaintiff, as a student, from the tortious acts of third parties.

128.   Defendants' breach of duty, at all times material, jointly and severally, are tantamount to intentional and deliberate and willful indifference in failing to provide a safe school to protect the Minor Plaintiff from said tortious and/or criminal acts of others.

129.   Said intentional, deliberate and/or willful indifference warrant the imposition of punitive and/or exemplary damages.

130.   As a direct and proximate result of said deliberate and/or willful indifference and failure, The Minor Plaintiff was raped and was sexually assaulted by third parties aforesaid.

131.   As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment, interference with right to education, and other injuries.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages, punitive and/or exemplary damages, reasonable attorney fees,

state statutory interest and costs and such other relief as the circumstances deem mete.

## COUNT NO. ELEVEN:  VIOLATION OF GENERAL DUTIES

132.    Paragraphs 1 through 131 are incorporated and made a full part hereof.

133.    Defendants jointly and severally violated their general duties owed to the Minor Plaintiff, as shown aforesaid.

134.    Defendants' breach of duty, at all times material, jointly and severally, are tantamount to intentional and deliberate and willful indifference in failing to comply with and/or comport to carry out their aforesaid general duties to the Minor Plaintiff and to protect her from harm and/or injury and/or her right to education and educational opportunities and/or protect or safeguard the Minor Plaintiff from said tortious and/or criminal acts of others.

135.    Said failures and violations were intentional, deliberate and/or willful indifference warrant the imposition of punitive and/or exemplary damages.

136.    As a direct and proximate result of said deliberate and/or willful indifference and failure, The Minor Plaintiff was raped and was sexually assaulted by third parties aforesaid.

137.    As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment, interference with right to education, and other injuries.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages, punitive and/or exemplary damages, reasonable attorney fees, state statutory interest and costs and such other relief as the circumstances deem mete.

## COUNT NO. TWELVE:  VIOLATION OF STATE CIVIL RIGHTS ACT

138.     Paragraphs 1 through 137 are incorporated and made a full part hereof.

139.    Such acts and/or failure to act by the defendants, jointly and severally, violated

plaintiffs' civil rights under R.I. G. L. 42-112-1 and 2.

140.    As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional

distress and psychological damage, post traumatic syndrome, medical expenses, loss of

enjoyment, interference with right to education, and other injuries.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally,

reasonable attorney fees, interest and costs and such other relief as the circumstances deem mete.

## COUNT NO. THIRTEEN:  VIOLATION OF EQUAL PROTECTION TO EQUAL

## ACCESS TO AN EDUCATIONAL ENVIRONMENT FREE FROM HARASSMENT

## AND CONSTITUTE DISCRIMINATION AS GUARANTEED BY THE

## RHODE ISLAND CONSTITUTION

141.    Paragraphs 1 through 140 are incorporated and made a full part hereof.

142.    Such acts and/or failure to act by defendants, jointly and severally, violate the Minor

Plaintiff's rights to equal protection, due process, right to be free from discrimination, and right

to justice guaranteed to her under the Rhode Island Constitution, Article I, Sections 2 and 5.

143.    As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional

distress and psychological damage, post traumatic syndrome, medical expenses, loss of

enjoyment, interference with right to education, and other injuries.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally,

reasonable attorney fees, state statutory interest and costs and such other relief as the

circumstances deem mete.

## COUNT NO. FOURTEEN:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

144.    Paragraphs 1 through 143 are incorporated and made a full part hereof.

145.    Said negligent acts and/or failure to act constitute negligent infliction of emotional distress.

146.    As a direct and proximate result of said negligence, jointly and severally, by defendants, such acts caused and/or inflicted emotional distress and other harm to the Minor Plaintiff. WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, reasonable attorney fees, state statutory interest and costs and such other relief as the circumstances deem mete.

**COUNT NO. FIFTEEN:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

147.    Paragraphs 1 through 146 are incorporated and made a full part hereof.

148.    Said acts and/or failure to act by the defendants, jointly and severally were willful and/or intentional and constitute the intentional infliction of emotional distress.

149.    Said acts and/or failure to act by the defendants, jointly and/or severally, were willful, wanton, wrongful, reckless, malicious and/or criminal acts and took place at defendant school, where the Minor Plaintiff was a student and was only 13 years of age.  And further, such acts were shocking, severe, pervasive, objectionably offensive, and also had the direct effect of undermining and being detrimental to the Minor Plaintiff's educational access, resources and opportunities and to her health, well being, causing emotional distress, and caused and will continue to cause further harm and caused and continue to cause her to seek and undergo medical treatment now and for the future and more probably than not are permanent.

150.    As a direct and further proximate cause thereof, the Minor Plaintiff suffered emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment, interference with right to education, and other continuing injuries.

151.    Said acts and/or failure to act warrant the imposition of punitive and/or exemplary damages.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages, punitive damages, reasonable attorney fees, state statutory interest and costs and such other relief as the circumstances deem mete.

## COUNT SIXTEEN – RETALIATION

152.    Plaintiffs incorporate by reference herein and realleges the allegations in Paragraphs 1 through 151 above as though set forth fully herein.

153.    The Minor Plaintiff engaged in actions protected by laws and Declaration of Rights of the State of Rhode Island when she filed this complaint, containing the allegations contained therein, regarding unlawful discrimination, including sexual assaults, batteries and rapes inflicted upon her.

154.    Because of the Minor Plaintiff's protected actions in bringing this suit Rhode Island law and under her rights to redress through other counts and to have unfettered access to due process and equal process, the defendant City, acting through its attorney retaliated against the Minor Plaintiff by for bringing this action, in order to limit its damage and exposure in this pending lawsuit.   Furthermore, its efforts to reduce or cover-up the violation of the Minor Plaintiff's by second degree sexual assault by Morton to a misdemeanor when the proper charge was a second degree sexual assault, the facts called for a second degree sexual assault, a felony and the reduction of the charge to a misdemeanor was an obstruction of the Minor Plaintiff's rights for redress and justice.

155.    As a result of defendant City's unlawful retaliation against the Minor Plaintiff, in violation of Rhode Island law, the Minor Plaintiff has suffered, and continues to suffer loss of

education opportunities and benefits, injuries, damages and losses, including, but not limited to

emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and

damage to ad delays in her pursuit of education.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally, for

compensatory damages, punitive damages, reasonable attorney fees, state statutory interest and

costs and such other relief as the circumstances deem mete.

**PLAINTIFFS REQUEST JURY DEMAND.**

DATED: June 20, 2018


/s/ *George Patrick Hovarth*                                   /s/ *Edward John Mulligan*
_____                 _____
*George Patrick Hovarth*  #5683                          *Edward John Mulligan* #0143
75 Pak Place                                                          50 Park Row West, Suite 111
Pawtucket, R.I. 02860                                          Providence, R.I. 02903
Tel (401) 723-9010                                               Tel (401) 453-2950
Fax (401) 723-3130                                              Fax (401) 453-5545
E-mail: hovarthlaw@verizon.net                          E-mail: ejmull@ cox.net
                                                                            edwardjohnmulligan@gmail.com


Attorneys for Plaintiffs


CERTIFICATION OF SERVICE

I hereby certify that on this 20th day of June, 2018, I personally caused a copy of the foregoing to
be filed with this Court's CM/ECF system, which will send an e-mail to all counsel of record.


/s/ *Yanelly Rodriguez*
_____