# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

JANE DOE, parent and next of friend
of MARY DOE, a minor in and for her
own behalf and in their own right,
    Plaintiffs,

v.

CITY OF PAWTUCKET, RHODE
ISLAND; PATTI DiCENSO,
SUPERINTENDENT OF
PAWTUCKET SCHOOL
DEPARTMENT, in her official and
individual capacity; PAWTUCKET
SCHOOL COMMITTEE and
Pawtucket School Committee
Members: Gerald Charbonneau,
Chair, Michael Araujo, Joanne Bonollo,
Erin Dube, John J. Crowley, Joseph
Knight, and Elena Vasquez, in their
official capacity; LINDA GIFFORD,
SCHOOL PRINCIPAL OF
PAWTUCKET LEARNING
ACADEMY, in her official and
individual capacity; DAVID MORTON,
in his official and individual capacity;
THOMAS J. ANDERSON, in his
official and individual capacity;
KAREN DUBE, in her official and
individual capacity; ELIZABETH
VELIS, in her official and individual
capacity; LEE RABBIT, in her official
and individual capacity; KERRI DAY,
in her official and individual capacity;
SUSAN HALL, in her official and
individual capacity; MICHAELA
FRATTARELLI, in her official and
individual capacity; CHRISTOPHER
SWICZEWICZ, in his official and
individual capacity; and SHAUN W.
STROBEL, PAWTUCKET CITY

C.A. No. 17-365-JJM-LDA

TREASURER; and unknown Richard                )
and Rita Roes,                                 )
      Defendants.                 )
                                                )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Defendants have jointly moved to dismiss Plaintiffs' Third Amended Complaint. ECF No. 73. For reasons set forth below, the Court GRANTS Defendants' motion.

## I.    BACKGROUND

Plaintiffs, Mary Doe ("Mary"), a minor, and Jane Doe, her mother and next of friend, brought this action alleging various federal and state law claims against the City of Pawtucket, the Pawtucket School Committee and its members, Superintendent of School, Patti DiCenso, Principal of the Pawtucket Learning Academy, Linda Gifford, and additional teachers and members of the Pawtucket Learning Academy ("PLA") staff, regarding alleged incidents of sexual assault. At all relevant times, Mary was a student at the PLA, a federally funded school in the City of Pawtucket for students with disabilities and students treated as disabled students. ECF No. 57 at ¶¶ 17, 24. The Complaint involves five allegations of sexual assault:

Allegation 1: Mary alleges that she was raped, assaulted, and molested for two years at the PLA. *Id.* at ¶ 26. The allegations include that during school hours and other occasions, "at or on the way to and from gym classes, during class hours,"

unnamed students would "grab at," "butt slap," and "grope" Mary, and "make sexual remarks and suggestions to her," while Defendants "stood by." *Id.* at ¶ 27.

Allegation 2: Mary alleges that in April 2016, a "male gym student got behind [Mary], and simulated sexual fornication by rubbing his genitalia area against [Mary's] clothed anal area, in front of the gym teacher and class." *Id.* at ¶ 30. The Complaint also includes that "[a]t that time, [the gym teacher] and/or the school contacted the police." *Id.*

Allegation 3: Mary alleges that in May 2016, a student raped her in the school bathroom. *Id.* at ¶ 35. The Complaint continues that Principal Gifford asked Mary if she "had sex with [the student]?" and "took no further steps" when Mary answered yes. *Id.* at ¶ 38.

Allegation 4: Mary alleges that in June 2016, a student at the school, Ivander DeBurgo, sexually assaulted her in the school while she was waiting for her father to pick her up. *Id.* at ¶¶ 50, 57.[1] The Complaint includes that Principal Gifford and other teachers directed Mr. DeBurgo to leave the building. *Id.* at ¶¶ 43, 50. After being directed to leave, Mr. DeBurgo unlawfully re-entered the building. *Id.* at ¶ 53. Mr. DeBurgo entered Defendant Thomas Anderson's classroom and he told Mr. DeBurgo to leave. *Id.* at ¶ 47. Mary left Mr. Anderson's classroom and was found in the bathroom with Mr. DeBurgo by Mrs. McLaughlin. *Id.* at ¶¶ 56, 61-65.

---

[1] Mr. DeBurgo was convicted on May 3, 2017 of first-degree child molestation. ECF No. 57 at ¶ 74.

The Complaint alleges that all Defendants knew of Mr. DeBurgo's propensity for sexual assault and that Superintendent Patti DiCenso conspired with Assistant Superintendent Lee Rabbit and Dean Christopher Swiczewicz to keep the matter quiet. *Id.* at ¶¶ 40, 42, 68.

Allegation 5: Mary alleges that in April 2017, a faculty member, David Morton, "smacked and grabbed her butt..." *Id.* at ¶ 78. The Complaint also alleges that before the incident, Defendants DiCenso, Rabbit, Gifford, Swiczewicz, and Anderson "had, for some time, known of" incidents where Mr. Morton touched and tapped the inner thigh of three other students. *Id.*

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Mary must present facts that make her claim plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). Next, the court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.*

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level..." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or "a formulative recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does a complaint suffice if it tenders "naked

assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.2d 153, 159 (1st Cir. 2011) (holding that combined allegations, taken as true, "must state a plausible, not a merely conceivable, case for relief.").

## III. DISCUSSION

### A. The Complaint Fails to State Any Substantive Allegations Against Defendants Elizabeth Velis, Kerri Day, Susan Hall, and Michaela Frattarelli.

Mary does not make any substantive allegations against Defendants Velis, Day, Hall, and Frattarelli.[2] A complaint must have factual content that allows the Court to draw reasonable inferences that a specific Defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. To draw an inference, the complaint must allege facts linking each Defendant to the grounds on which that Defendant is potentially liable. *See id.*

Defendants Velis, Day, Hall, and Frattarelli are listed only in paragraph 12 of the Complaint as PLA personnel and in paragraph 22 of the Complaint as teachers. Beyond the cursory references, there are no substantive allegations or facts linking any of these Defendants to the grounds on which they are potentially liable. For these reasons, the claims against these Defendants are dismissed.

---

[2] Plaintiffs fail to address this argument in their opposition to Defendants' Motion to Dismiss.

### B. The Title IX Claim (Count I) Fails

In Count I, Mary sues Defendants under Title IX of the Education Amendments of 1972 ("Title IX"). *See* 20 U.S.C. §§ 1681, *et seq.* Mary alleges that the Defendant School District violated her rights when it "continued to subject [Mary]...to sexual harassment based on her sex" and "failed to promptly and appropriately respond to the sexual harassment and assaults..." ECF No. 57 at ¶¶ 81, 82. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

#### 1. The Title IX Claim Fails Against All Individual Defendants.

Courts have limited claims under Title IX to suits against grant recipients and held that Title IX does not authorize "suit against school officials, teachers, and other individuals." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65 (1st Cir. 2002). Here, no individually named defendant is a recipient of federal funding. Accordingly, Title IX claims against all individual Defendants are dismissed.

#### 2. The Title IX Claim Fails to Set Forth Facts to Establish the Required Elements of Notice, Severity, and Deliberate Indifference.

A recipient of federal funding can be liable under Title IX if "its deliberate indifference subjects its students to harassment." *Doe v. Brown University*, 896 F.3d 127, 130 (1st Cir. 2018) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999)). To establish such a "deliberate indifference" claim, Mary must set forth sufficient plausible facts that would show that (1) she was subject to "severe,

pervasive, and objectively offensive" sexual harassment; (2) the harassment caused her to be deprived of educational opportunities or benefits; (3) the Defendants were aware of this harassment in (4) its programs and activities and (5) its response, or lack thereof, to the harassment was "clearly unreasonable." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007).

### a. Allegation 1

Mary alleges that she was raped, assaulted, and molested for two years at the PLA and that all Defendants "knew or should have known" about it. ECF No. 57 at ¶ 26. The allegations read as generalized assertions that "[d]uring school hours and [diverse] occasions, co-student(s) would grab at her buttocks, harass her, threaten her, sexually discriminate against her, and make sexual remarks and suggestions to her..." *Id.* at ¶ 27. Mary also alleges that she was subjected to several sexual incidents, at or on the way to and from gym classes, during class hours, where she was "butt slapped" and/or groped by male and female students. *Id.* at ¶ 28.

The allegations here however do not set forth plausible facts of knowledge by PLA officials. Mary does not allege that she reported the acts or that any school official saw them. Instead, she alleges that the "defendant school and [its] personnel" were "armed with knowledge of such sexual assaults..." *Id.* These generalized assertions are insufficient. *Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further enhancement" are not sufficient); s*ee Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 231 (D. Mass. 2015) (holding that undetailed and conclusory assertions that defendant had knowledge were insufficient to establish notice); *see*

*also Doe v. Bradshaw*, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (dismissing portion of a Title IX claim based on knowledge of harassment because plaintiffs offered only conclusory allegations).

The Complaint also alleges that "Defendants superintendent and school principal had or should have had knowledge of this sexual assault, as well as other sexual assaults referenced herein." *Id.* at ¶ 31. Courts have rejected constructive knowledge and held that Title IX recipients must have actual knowledge of the harassment. *See Davis*, 526 U.S. at 650; *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 289 (1998).

Having failed to plead any plausible facts of knowledge on the part of the school officials, Mary necessarily did not set forth any fact to establish "deliberate indifference" by any school official in response to the alleged harassment.

### b. Allegation 2

Mary also alleges that in or about April 2016, in physical education class, a male student "got behind [Mary], and simulated sexual fornication by rubbing his genitalia area against [Mary's] clothed anal area, in front of the gym teacher and class." ECF No. 57 at ¶ 30. While the allegations include that the "gym teacher and the Defendant superintendent and principal, knowing of the incident, failed to take any action to comport with Title IX and/or state law and/or City Policy for a safe school and protection of [Mary]," Mary admits that "she and/or the school contacted the police." *Id.*

Mary does not show how the Defendants' response was deliberately indifferent. By admitting that the incident was reported to the police, the allegation suggests the very opposite. *See Davis*, 526 U.S. at 648 (holding that funding recipients in the Title IX context are deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment is clearly unreasonable). Mary has failed to allege with plausible facts that the response, or lack thereof, to the harassment was "clearly unreasonable." *Porto*, 488 F.3d at 72-73.

### c. Allegation 3

Mary alleges that in or around May 2016, a PLA student raped her in the school bathroom. *Id.* at ¶ 35. The Complaint asserts that the day after the alleged incident, Principal Gifford approached Mary and asked her "I heard you had sex with [the student]?" *Id.* at ¶ 38. Mary also claims that she answered "Yes," and Principal Gifford took no further steps. *Id.*

Plaintiffs themselves contradict this allegation of knowledge on the part of Principal Gifford. The medical report submitted by the Plaintiffs (ECF No. 80, Plaintiffs' Ex. B3 at 10) and the police report submitted by Plaintiffs (Plaintiffs' Ex. B1) both show Mary denying that anything sexual had taken place between her and the student, including to Principal Gifford.[3] Despite the alleged interaction between

---

[3] Plaintiffs offered the documents to bolster their argument against Defendants' motion to dismiss. *See Comley v. Town of Rowley*, 296 F. Supp. 3d 327, 331 n.2 (D. Mass. 2017) (noting materials offered in support or opposition to a 12(b)(6) motion to dismiss may be considered without converting the motion to one for summary judgment) (citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

Mary and Principal Gifford, the facts of limited disclosure fail to constitute sufficient plausible facts to make the Committee responsible for a Title IX violation.

### d. Allegation 4

Mary alleges that on June 7, 2016, Mr. DeBurgo sexually assaulted her in the school. Mary does not set forth facts that if proven would show that the Committee was deliberately indifferent to it so that its response was "clearly unreasonable." *See Porto*, 488 F.3d at 72-73. The Complaint alleges that Mrs. McLaughlin, the school secretary, found Mary in the bathroom with Mr. DeBurgo after learning from Mr. Anderson that he thought Mary was with Mrs. McLaughlin. ECF No. 57 at ¶¶ 41, 61-66. Mary does not allege that she reported what happened when she was found, or that there were any visible signs of what had occurred. No plausible allegations support liability by any school department personnel for this awful action by a co-student.

Moreover, the Complaint admits that the day after this incident, "the Pawtucket Police Department, in accordance with City and School policy, interviewed the minor plaintiff..." ECF No. 57 at ¶ 73. The Committee's actions in discovering and reporting the matter to criminal investigators runs counter to the claim of deliberate indifference. *See Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (contacting authorities negates allegation of deliberate indifference).

### e. Allegation 5

Mary also alleges that in April 2017, a faculty member "smacked and grabbed her butt," and that Defendants knew about it.[4] ECF No. 57 at ¶ 78. The Complaint does not set forth facts showing that the Committee was deliberately indifferent to her Title IX rights. There are no allegations, for example, that school officials did not act against the teacher or did not end the employment relationship. Instead, Mary admits that Mr. Morton was prosecuted for these actions. ECF No. 57 at ¶ 78(d).

### C. The Title VI Claim (Count II) Fails

Mary alleges that Defendants violated Title VI of the Civil Rights Act of 1964. Title VI provides that "[n]o person...shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. First, no individual Defendant can be liable because Title VI does not provide for individual liability. *See Pollard,* 132 F. Supp. 3d at 229-30; *see also Whitfield v. Notre Dame Middle Sch.,* 412 Fed. Appx. 517, 521 (3d Cir. 2011); *Price ex rel. Price v. La. Dep't of Educ.,* 329 Fed. Appx. 559, 561 (5th Cir. 2009); *Buchanan v. City of Bolivar,* 99 F.3d 1352, 1356 (6th Cir. 1996); *Shotz v. City of Plantation,* 344 F.3d 1161, 1171 (11th Cir. 2003). Therefore, the Court dismisses the individuals as defendants in Count II.

---

[4] The Title IX Count appears premised only on sexual harassment perpetrated by other students, but the Court reads the Complaint generously. ECF No. 57 at ¶ 81.

Second, Mary does not allege any facts showing intentional discrimination because of her race. *See Cohen v. Brown Univ.*, 101 F.3d 155, 167 n.1 (1st Cir. 1996) (Title VI prohibits discrimination because of race, color, national origin). There are no allegations, for example, that school officials treated similar allegations of a student of another race differently. There is no mention of race in the Complaint. As a result, Mary's Title VI claim fails.

## D. The Rehabilitation Act Claim (Count III) Fails

Mary alleges that Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. First, no individual Defendant can be liable because they do not receive federal fund as individuals. *See Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 117 (D.P.R. 2011). The claim also fails because Mary has not alleged that she suffers from a physical or mental impairment that limits a major life activity. *See Cook v. State of R.I., Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 23 (1st Cir. 1993). Mary also does not set forth facts showing that she exhausted her administrative remedies. *See Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 409-10 (D.R.I. 2003) (holding that local education authorities are in a better position than a federal court to determine whether a student has been deprived of a free appropriate public education guaranteed by Section 504 regulations). The Rehabilitation Act Claim therefore fails.

### E. The Constitutional Claims (Counts IV & V) Fail

The Court interprets Counts IV and V as allegations of Equal Protection Clause and Due Process Clause violations under 42 U.S.C. § 1983. Count IV alleges a violation of the Equal Protection Clause and references sexual harassment and practices instituted or allowed that "constitute[d] disparate treatment of female students and, more particularly of the minor plaintiff." ECF No. 57 at ¶ 95, 99. Mary also alleges that all Defendants violated her right to substantive due process by "failing to protect her from physical, sexual, mental, and emotional abuse..." *Id.* at ¶ 93. In Count V, Mary alleges an Equal Protection Clause claim that Defendants Superintendent DiCenso and Principal Gifford "should have known that their response to the aforesaid sexual assault allegations must comply with the Title IX's promulgated implementing regulations[,]" and that the Committee failed to "supervise and train." *Id.* at § 109.

Section 1983 "is not a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To plead a viable claim under section 1983, the Complaint must allege both a violation of a right secured by the United States Constitution or laws, and that the alleged deprivation was committed by a person acting under color of state law. *See Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustee*, 855 F.3d 681, 687 (5th Cir. 2017). Both Counts IV and V do not state a constitutional claim.

### 1. The Equal Protection Clause Allegations Fail to State a Claim

Mary's claims that Defendants violated her equal protection rights by inadequately protecting her from and responding to sexual harassment must be dismissed because she did not adequately allege that she was afforded some different level of protection from harassment than her peers as a result of her membership in a protected class. The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." *Mulero–Carrillo v. Román–Hernández*, 790 F.3d 99, 105–106 (1st Cir.2015). To state a § 1983 claim based on violations of the Equal Protection Clause, a plaintiff "must allege facts plausibly demonstrating that compared with others similarly situated," the plaintiff was "selectively treated...based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* at 106. Typically, a plaintiff asserting an Equal Protection Clause violation "must identify his putative comparators" to make out a threshold case of disparate treatment. *See Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011); *Thomas v. Town of Chelmsford*, No. 16-11689 (PBS), 2017 U.S. Dist. LEXIS 115590, at *38-39 (D. Mass. July 25, 2017) (failure to identify any "similarly situated comparator forecloses equal protection claim").

Here, Mary does not allege any facts or address the argument in their opposition that any defendant treated the alleged harassment of her differently than any other student, let alone that the treatment was because of her membership in a

protected class. The insufficient allegations require dismissal of the Equal Protection Clause claims.

## 2. The Due Process Clause Allegations Fail to State A Claim

Mary also alleges that all Defendants violated her right to substantive due process under the Fourteenth Amendment to the United States Constitution. ECF No. 57 at ¶ 93. The relevant inquiry here is whether Mary has pleaded plausible allegations of any conscience-shocking behavior by the Defendants that led to the alleged injury. The Court finds that the answer is no.

First, Mary's allegations of sexual abuse by students do not state a due process clause claim because students are not state actors. As for this claim, Mary emphasizes that the rape and sexual molestation of a "13 or 14-year-old student by older males" in "a school bathroom" is shocking "to the contemporary [conscience]..." ECF No. 78 at 63. But the Substantive Due Process Clause protects individuals from abuses of *governmental* power. Generally, it imposes no constitutional duty on the school to protect students from harm inflicted by other students. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196 (1989); *see also Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172 (3d Cir. 2016) (holding that no substantive due process claim for peer-on-peer harassment because no special relationship between student and district); *Marcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp. 2d 657, 673 (S.D. Ohio 2010) (failing to find a substantive due process claim based on a failure of school officials to prevent student-

on-student sexual harassment); *Morgan v. Bend-La Pine Sch. Dist.*, No. CV-07-173-ST, 2009 WL 312423, at *10, n. 25 (D. Or. Feb. 6, 2009) (same).

Mary also rests her substantive due process claim on the allegations that Mr. Morton "smacked or grabbed [Mary's] butt" on one occasion. ECF No. 57 at ¶ 78. Under *Monell*, a municipality cannot be liable for its employees alleged constitutional violations under a theory of respondeat superior; it can only be liable when the violation arises from, or is caused by, a governmental policy or custom. 436 U.S. at 690-95. Likewise, supervisory officials, such as the school officials here, cannot be held vicariously liable under § 1983. Supervisory liability exists only where "(1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 192 (1st Cir. 1998). The causal link between the supervisor action or inaction and the subordinate wrongdoing must be tight: "Deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008). In *Lipsett*, the First Circuit held that summary judgment was inappropriate when the plaintiff told her supervisors she was being sexually harassed and neither supervisor "took any steps whatsoever to investigate those allegations..." and noted that the inaction "could be found to be gross negligence amounting to deliberate indifference." *Lipsett*, 864 F.2d at 907.

Mary alleges that Defendants "had for some time, known of" incidents in which Mr. Morton had "touched" or "tapped" the thigh of a student or students and made lascivious comments to another student. ECF No. 57 at ¶ 78.[5] However, Mary does not allege the tight causal link between any alleged knowledge on the part of the Defendants and the conduct of Mr. Morton or that the response upon knowledge of the incident was deliberately indifferent. Indeed, Mary admits that Mr. Morton was criminally prosecuted because of the alleged interaction with Mary. ECF No. 57 at ¶ 78(d). The facts as pleaded do not support a substantive due process violation.

### 3. The Failure to Train Claim (Count V) Fails to State A Claim

Mary also alleges a violation of the Equal Protection Clause under § 1983 that Superintendent DiCenso and Principal Gifford "should have known that their responses to the aforesaid sexual assault allegations must comply with the Title IX's promulgated implemented regulations[,]" and that the Defendant School Committee violated her rights by failing to "supervise and train" in "mandated investigative requirements." ECF No. 57 at ¶¶ 108, 109. Only where a "municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

---

[5] Mary also alleges other incidents involving Mr. Morton but she does not allege that any Defendant knew about these incidents. ECF No. 57 at ¶ 78(iv)-(v).

Mary has not pleaded a facially plausible constitutional claim. There is therefore no foundation for her "failure to train" assertion.

### F. The Retaliation Claims (Counts VI and VII) Fail

#### 1. The Retaliation Claim Against the Committee, Mrs. Gifford, Mrs. DiCenso Fails

In Count VI, Mary alleges that the Committee, Principal Gifford, Superintendent DiCenso, and others retaliated against her for bringing this lawsuit by delaying her placement in a private school. ECF No. 57 at ¶ 112. The claim fails as Mary does not set forth facts showing material adverse action because of the alleged retaliation.

Mary does not plead enough facts to show that she suffered adverse action because of alleged retaliation. The Complaint alleges that Defendants retaliated against Mary by delaying her placement in private school and not obtaining promptly proper transportation and books. ECF No. 57 at ¶ 112. However, Mary began school at a private school of her choosing at the expense of the Committee one day after the school's opening day in September 2017 and received academic books and materials at the Committee's expense within days of enrollment. ECF No. 73-1 at 45. The Complaint lacks the necessary facts showing that Mary suffered any injury because of any alleged retaliation.

#### 2. The Title IX Retaliation Claim Fails

In Count VII, Mary brings a retaliation claim against the City under Title IX. To successfully plead a Title IX retaliation claim, Mary must plead factual allegations showing that (1) she engaged in activity protected by Title IX; (2) the alleged

retaliator knew of the protected activity; (3) the alleged retaliator undertook some action disadvantageous to her; and (4) a retaliatory motive played a substantial part in prompting the adverse action. *Frazier*, 276 F.3d at 67. Mary alleges that "defendant City, acting through its attorney retaliated against [Mary] by...reduc[ing]...the violation of the Minor Plaintiff's by second degree sexual assault by Morton to a misdemeanor..." ECF No. 57 at ¶ 115. Yet the decision of whether to prosecute and what charges to file rests entirely in the prosecutor's discretion. *See State v. Tilson*, 794 A.2d 465, 468 (R.I. 2002). There is no Title IX retaliation claim against any of the named defendants.

## G. Supplemental Jurisdiction of State Law Claims

The Court keeps supplemental jurisdiction over Mary's remaining state law claims because (1) the federal and state claims are "interconnected," and (2) retaining jurisdiction supports the interests of fairness and judicial economy. *See Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (citing 28 U.S.C. § 1367(c)(3)).

### 1. The Right to A Safe School Claims (Counts VIII and IX) Fail

In Counts VII and IX, Mary seeks money damages based on her assertion that Defendants did not provide a "safe school" under R.I. Gen. Laws § 16-2-17. ECF No. 57 at ¶¶ 117-25. R.I. Gen. Laws § 16-2-17 sets forth the circumstances under which schools may suspend "disruptive" students who persistently create unsafe school conditions. That said, no Rhode Island court has found that the statute provides for

a private cause of action against municipal or individual Defendants. The claims relying on R.I. Gen. Laws § 16-2-17 therefore fail.

## 2. The Negligence Claims (Counts X and XI) Fail

Mary alleges two counts of negligence against Defendants. ECF No. 57 at ¶¶ 126-37. In Count X, she claims that all Defendants breached the "common law duty" to protect her from the tortious and/or criminal acts of third parties. *Id.* at ¶¶ 127-28. In Count XI, she claims that all Defendants breached a "general[] duty to protect her from harm and/or injury and/or to protect her from the wrongful acts of others." *Id.* at ¶¶ 133-34. The negligence claims do not state a claim upon which relief can be granted.

First, the individual Defendants cannot be held liable to a third party for acts performed within the scope of their employment. *See Kennet v. Marquis*, 798 A.2d 416, 418 (R.I. 2002) ("[i]t has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his [or her] authority"). Second, Principal Gifford, Superintendent DiCenso, and Assistant Superintendent Rabbit cannot be held liable under a theory of respondeat superior. *See Gray v. Wood*, 64 A.2d 191, 194 (R.I. 1949) (finding that supervisors cannot be held liable, as a matter of law, for "acts of nonfeasance or for...[their] subordinates' acts of misfeasance in which...[they] did not participate."). The Complaint does not set forth any facts alleging that these Defendants took part in, commanded, or ratified any alleged negligent act by others. For these reasons, Mary does not state a claim of negligence against any individual Defendant.

The negligence claims against the Committee fail because there is no factual support for the inference that any assault or behavior by another individual was reasonably foreseeable. To prove a claim of negligence, the plaintiff must set forth plausible facts showing (1) a duty owed by a defendant to a plaintiff; (2) a breach of that duty; (3) the proximate cause between the conduct and the resulting injury; and (4) damages. *See Daniels v. Fluette*, 64 A.3d 302, 304-05 (R.I. 2013). Foreseeability is a vital part of any negligence claim, central to the element of breach of duty and proximate cause. *See Lopez v. Universal Ins. Co.*, 98 F. Supp. 3d 349, 357 (D.P.R. 2015); *see also Geloso v. Kenny*, 812 A.2d 814 (R.I. 2002) (factors determining whether a duty exists include foreseeability and likelihood of the injury). Courts have held that school committees are not responsible for misconduct of its students, when the misconduct is not foreseeable. *See Daniels*, 64 A.3d at 306 (reasoning that a plaintiff seeking to hold a school liable for injuries resulting from the acts of another must show that such acts could have been reasonably foreseen by the school); *see also N. Kingstown Sch. Comm. v. Justine R.*, No. 13-605S, 2014 WL 8108411, at *15 (D.R.I. June 27, 2014) (noting that "a school has discretion in ensuring student safety, no duty absent foreseeable harm based on prior acts or other factors").

Mary does not allege plausible facts that show that the alleged misconduct was foreseeable. First, many allegations of alleged assaults omit the names of students, dates, and times of the incidents, but Mary alleges that Defendants had knowledge or should have known about them. ECF No. 57 at ¶¶ 28-31. As pleaded, there are no facts to set forth that any of the students had known assaultive propensities and

the incidents were foreseeable. Relatedly, Mary's allegations about the May 2016 assault in the bathroom do not show that the alleged assault was foreseeable. The Complaint lacks any facts to show that school officials were on notice to protect against a sexual assault by the student.

Mary's allegations about Mr. DeBurgo also do not state a negligence claim. First, there are no alleged facts supporting the claim that "school personnel" knew or "should have known" about an alleged prior rape by Mr. DeBurgo. ECF No. 57 at ¶ 42. The Complaint also acknowledges that Mr. DeBurgo wrongfully re-entered the school premises after being directed to leave and thereby gained "unlawful entry." *Id.* at ¶¶ 43, 47, 53, 57. The Complaint also lays out the actions of school officials about the incident including that Mrs. McLaughlin searched for Mary, notified Principal Gifford of what she had seen, Superintendent DiCenso was briefed the same day, and Pawtucket Police Department interviewed Mary the next day. *Id.* at ¶¶ 58-65, 67, 68, 73. Accordingly, there are no facts to support a claim of negligence against Defendants about the Mr. DeBurgo incident.

### 3. The Rhode Island Civil Rights Act Claim (Count XII) Fails

In Count XII, Mary asserts that Defendants violated her civil rights under Rhode Island's Civil Rights Act ("RICRA"), R.I. Gen. Laws §§ 42-112-1 *et seq.* RICRA protects against discrimination based on one's "race, color, religion, sex, disability, age, or country of ancestral origin." R.I. Gen. Laws § 42-112-1. The Court looks to federal law construing analogous civil rights statutes in assessing discrimination claims under RICRA. *See Colman v. Faucher*, 128 F. Supp. 3d 487, 491 n.8 (D.R.I.

2015) ("The Rhode Island Supreme Court analyzes [RICRA] claims using substantive federal law from analogous causes of action."). If Mary's intent is for her RICRA claim to mirror her federal discrimination allegations under Title IX, the Equal Protection Clause, Title VI, and Section 504,[6] this claim fails for the reasons in the sections above.

### 4. The Rhode Island Constitution Claims (Count XIII) Fail

In Count XIII, Mary alleges a "[v]iolation of equal protection to equal access to an educational environment free from harassment and . . . discrimination as guaranteed by the Rhode Island Constitution." ECF No. 57 at 39. Mary seeks remedy under the Rhode Island Constitution, Article I, Sections 2 and 5. *Id.* at ¶ 142. The claim fails.

Mary's state constitutional claims to equal protection and due process under Article 1, Section 2 of the Rhode Island Constitution fail for the same reasons as their federal counterparts. *See R.I. Depositors Econ. Prot. Corp. v. Brown*, 659 A.2d 95, 100 (R.I. 1995) (Equal protection standards of Rhode Island Constitution coterminous with federal counterpart); *Pelland v. Rhode Island*, 317 F. Supp. 2d 86, 97 (D.R.I. 2004) (analysis of Rhode Island equal protection and due process is identical to parallel federal rights).

Mary also alleges that Defendants violated her "right to be free from discrimination" under Article 1, Section 2 of the Rhode Island Constitution, but does

---

[6] Mary does not allege whether she is seeking relief for discrimination based on sex, disability, or some other protected status.

not allege what protected status is the basis for the relief. Additionally, the claim must be dismissed because the Rhode Island Civil Rights Act provides Mary with a comprehensive remedy for her claim of discrimination. *See Folan v. State/Dep't. of Children, Youth & Families*, 723 A.2d 287, 292 (R.I. 1999) (holding that it was unnecessary to "create or recognize a direct remedy under article 1, section 2 of the Rhode Island Constitution" for a claim when the plaintiff was provided with comprehensive statutory remedies).

Finally, Mary alleges that Defendants violated her "right to justice" under Article 1, Section 5 of the Rhode Island Constitution. This claim fails because Article 1, Section 5 is not a self-executing section with a private right of action. *See Smiler v. Napolitano*, 911 A.2d 1035, 1039 n.5 (R.I. 2006).

### 5. The Negligent and Intentional Infliction of Emotional Distress Claims (Counts XIV and XV) Fail

In Count XIV, Mary asserts that Defendants' alleged "negligent acts and/or failure to act constitute negligent infliction of emotional distress" and "such acts caused and/or inflicted emotional distress and other harm to" Mary. ECF No. 57 at ¶¶ 145-46. Rhode Island courts have noted that at least some proof of medically established physical symptomology is needed for a successful negligent infliction of emotional distress claim. *See Perrotti v. Gonicberg*, 877 A.2d 631, 637 (R.I. 2005); *DiBattista v. State*, 808 A.2d 1081, 1089 (R.I. 2002) (party asserting a claim involving negligent infliction of emotional distress may not rely on unsupported assertions of physical ills and must produce evidence of the physical manifestations of their alleged emotional distress). Mary's claim fails because she does not allege facts showing

physical harm manifested by objective symptomology. Instead, the Complaint includes repetitive and conclusory assertions that she needed medical care, suffered emotional distress and psychological damages, post traumatic syndrome, and loss of enjoyment. ECF No. 57 at ¶¶ 77, 87, 89, 90, 102, 110, 116, 121, 131, 137, 140. Accordingly, the negligent infliction of emotional distress claim fails.

In Count XV, Mary asserts that Defendants' "acts and/or failure to act" constitute intentional infliction of emotional distress. ECF No. 57 at ¶ 148. The Rhode Island Supreme Court has required at least some proof of medically established physical symptomology for intentional infliction of emotional distress claims. *See Swerdlick v. Koch*, 721 A.2d 849, 862-63 (R.I. 1998). Count XV fails for the same reason that Count XIV fails as Mary does not allege any supporting facts describing the symptomology of her alleged emotional distress beyond conclusory and repetitive assertions.

### 6. The State Law Retaliation Claim (Count XVI) Fails

In Count XVI, Mary alleges that the Defendant City, acting through its attorney, retaliated against her for bringing this lawsuit. ECF No. 57 at ¶ 154.[7] As with the Retaliation Claims of Counts VI and VII, the Complaint does not define the "protected activity" in which Mary engaged in and against which Defendants retaliated. Further, Mary does not allege that the Defendant City, through its

---

[7] Plaintiffs do not oppose Defendants' arguments on Count XVI in any manner. *See* ECF No. 78 at 71 (noting that in "the case at bar there are two counts for Retaliation, Counts Numbered Six and Seven"). There is no reference to Count XVI in Plaintiffs' objection to the motion to dismiss.

attorney, had any knowledge of this lawsuit as is necessary to show a prima facie case of retaliation. Finally, Mary cannot show that she suffered an adverse action as there is no standing to challenge the charge against Mr. Morton. *See Tilson*, 794 A.2d at 468 (noting that the "decision whether or not to prosecute, and what charge to file…generally rests entirely in [the prosecutor's] discretion.").

## IV.    CONCLUSION

A fellow student raped Mary on school premises. She also allegedly experienced inappropriate sexual conduct while at school. Acknowledging these horrible incidents, however, does not suffice for a complaint that must allege plausible facts to support the causes of actions. Here, the Plaintiffs have filed three complaints, yet they still do not allege plausible facts that support any cause of action against these Defendants. The Third Amended Complaint does not recite facts to "raise a right to relief above the speculative level" (*Twombly*, 550 U.S. at 555) but instead offers "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The Court therefore GRANTS the Defendants' Joint Motion to Dismiss Plaintiffs' Third Amended Complaint. ECF No. 73.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

April 16, 2019