UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARY DOE, parent and next of friend of JANE DOE, as minor in and for her own behalf and in their own right,  *Plaintiffs,* | : : : : : |
| v. | : C.A. No. 17-365-JJM-LDA |
| CITY OF PAWTUCKET, RHODE ISLAND, *et al.*,  *Defendants.* | : : : : |

**DEFENDANT PAWTUCKET SCHOOL DEPARTMENT's
RESPONSE TO PLAINTIFFS' MOTION TO ADJUDGE IN CONTEMPT**

Now comes Defendant Pawtucket School Department ("PSD") and responds to Plaintiffs' Motion to Adjudge in Contempt as follows:

### I.  FACTS

On June 16, 2022, Plaintiffs served three subpoenas on PSD, each with a response date of June 28, 2022, and with response times of 11:00 a.m. ("Subpoena I"), 11:30 a.m. ("Subpoena II"), and 12:00 p.m. ("Subpoena III," collectively with Subpoena I and Subpoena II, the "Subpoenas"). Plaintiffs also contemporaneously served a subpoena on the Co-Defendant City of Pawtucket (the "City"), with a return date of June 28, 2022 at 12:30 p.m. (the "PPD Subpoena"). True and accurate copies of Subpoena I, Subpoena II, and Subpoena III are attached hereto as *Exhibit A*, *Exhibit B*, and *Exhibit C*, respectively. The City filed a motion to quash the Subpoenas and the PPD Subpoena on June 22, 2022 (the "Motion to Quash"). *See* ECF No. 106. On July 9, 2022, this Court denied the Motion to Quash and, ordered production of all documents within seven days.

On July 15, 2022, PSD issued a response to the Subpoenas which included 777 Bates-stamped pages (the "Production"). Besides a small number of instances in which documents

were redacted due to attorney-client privilege, all redactions in the Production were of the names of individuals who were students enrolled at PLA, or were themselves minor children, at the time the documents were created. As will be discussed below, those documents represent the only documents in the possession, custody, or control of PSD responsive to Subpoenas I and II.[1] They also represent all of the documents known to PSD to be in its possession, custody, or control which are relevant to this matter. The sole exception, Subpoena III, requested several documents which run farther afield from the scope of discovery—current and historical floor plans of PLA, current and historical listings or maps showing the locations of security cameras, and contracts and invoices relating to both over the past six years. *See generally Exh. C*, Subpoena III.

Nevertheless, Plaintiffs have filed the instant Motion to Adjudge in Contempt (the "Motion"). Though the allegations are presented somewhat ambiguously, PSD understands that Plaintiffs have the following objections to PSD's Production:

1. The Production was redacted, and opposing counsel was unable to print[2] the Production. *See* Affidavit of George Patrick Hovarth, Counsel for Plaintiffs, in Support of Motion to Adjudge in Contempt and for Sanctions ("Plaintiffs' Aff."). ECF No. 115-1, at ¶ 13.

2. Plaintiffs believe the Production did not contain the complete employment files of Dr. David Morton ("Morton") and Dr. Linda Gifford ("Gifford"), evidently based on a misunderstanding. *See id.* at ¶ 14.

3. The Production did not include documents responsive to the Subpoenas which Plaintiffs believe should have been covered by a prior document retention notice. *See id.* at ¶ 15.

4. The Production was admittedly incomplete, as to documents relating to Subpoena III. *See id.* at ¶¶ 16-17, 19.

---

[1] Subpoena III will be discussed separately, as it was admittedly incomplete on July 15, 2022.
[2] Counsel for Plaintiffs did not advise the undersigned of these problems prior to filing the Motion. If counsel for Plaintiffs continues to have these problems, the undersigned avers to him and to this Court that he would be happy to provide whatever technical assistance he can, or to submit the Production via a hand-delivered USB drive.

5. Plaintiffs believe the Production did not include certain videos which Plaintiffs believe to be in the possession, custody, or control of PSD. *See id.* at ¶ 18.

In addition to these five objections, Plaintiffs object that PSD is unable to make certain witnesses available for depositions in the time left under the current discovery order, and that PSD had not already scheduled an inspection of the Pawtucket Learning Academy ("PLA"), where the facts underlying this case took place. *See id.* at ¶¶ 20-23.

## II. STANDARD OF REVIEW

Trial judges enjoy broad discretion handling the management of pretrial discovery. *See FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). "As a result, an appellate court will intervene in such matters 'only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" *Id.* (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186 (1st Cir.1989)).

## III. ANALYSIS

### A. *All of the Redactions Made by PSD Were Pursuant to Law, Court Rule, or Privilege*

As stated above, the Production is largely made up of documents collected from a number of relevant custodians, primarily teachers and administrators at PLA. For that reason, almost all of the records fall within the definition of "education records" contained in the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), and its regulations. *See* 20 U.S.C. § 1232g(a)(4); 34 C.F.R. § 99.3. This definition provides that documents are educational records if they are "(1) Directly related to a student; and (2) Maintained by an educational agency or institution or by a party acting for the agency or institution." 34 C.F.R. § 99.3. FERPA provides that, as a condition of continued federal funding, schools may not have a "policy or practice" of releasing education records of students without the consent of those students'

parents,[3] save for a number of exceptions which PSD contends do not apply in this case. *See* 20 U.S.C. § 1232g(b)(1). In other words, PSD may not release education records without either obtaining consent or de-identifying the information. *See id.*; *see also* 34 C.F.R. § 99.31(b)(1) (setting forth standards for de-identification of documents).

The Production was redacted for three reasons: to redact materials subject to attorney-client privilege (and in one occasion also work-product privilege), to remove personal identifying information subject to redaction under Fed. R. Civ. P. 5.2(a), and to remove names and identifying information of students or former students of PLA pursuant to FERPA. Of the 777 pages produced, only 12 have any kind of redaction for attorney-client privilege, and three of those pages were produced with only partial redactions. All of the documents so-redacted are email communications to and from counsel, seeking or receiving legal advice. The overwhelming majority of the redactions in the Production are redactions of the names of former PLA students who, under FERPA, are entitled to notice prior to PSD's compliance with the Subpoenas if the documents are not de-identified. *See* 34 C.F.R. § 99.31(a)(9)(ii). Given the short timeframe for compliance after this Court's July 9 Order, PSD determined that it would be more feasible to redact the names of students contained in the documents than to attempt to contact the students and parents in question.

Moreover, several of the documents were provided to counsel for PSD with redactions in place. Notably, the notebook pages included as *Exhibit B* to Plaintiffs' Aff., as well as a number of other handwritten documents, were provided to the undersigned with certain redactions in place. In the case of *Exhibit B*, redactions made by black marker were performed prior to the undersigned's collection of those documents, and upon information and belief were made at the

---

[3] Or of the students themselves, if they have reached the age of majority. 20 U.S.C. § 1232g(d).

4

time the relevant entries were preserved for eventual production. Moreover, upon information and belief the redacted entries are records of incidents or information *entirely* outside the facts of the instant case, save for having been recorded in the same notebook. Such entries raise concerns relating to FERPA, and also to relevance—there is no reason to believe that records of unrelated incidents involving other students are relevant to this matter, and at any rate Plaintiffs have made no claim otherwise.

In short, each of the redactions made by PSD was either made pursuant to a privilege, a law, or a court rule. The vast majority of those redactions were pursuant to a federal statute which obligates PSD to either redact or provide notice to the individuals named therein. For that reason, PSD requests that this Court deny Plaintiffs' Motion as to any alleged default or contempt caused solely due to redactions—even if this Court finds that the documents must be produced without those redactions added by the undersigned, the redactions were pursuant to law.

Finally, while PSD would object to the characterization that the redactions "render[ed]" the documents illegible, PSD would be amenable to re-producing the Production with individual identifiers for any relevant students[4], similar to the procedure specified in Fed. R. Civ. P. 5.2(d). This may render the documents useable for the Plaintiffs, without identifying the students and triggering the notice requirements under FERPA.

---

[4] A number of students are *only* named in one or more of several emails relating to changes to scheduling or arrangement of students in the same classes, where one teacher would email what was effectively a full class roster to the others. Where a student's name appears *only* on these lists, PSD would suggest that it may be preferable for all parties to allow those students to remain fully de-identified.

### B. *Notwithstanding Plaintiff's Unsupported Suspicions, PSD Has Produced All Documents in Its Possession, Custody, or Control*

Several of Plaintiffs' objections relate to PSD's failure to provide certain documents requested by the Subpoenas. *See* Plaintiff's Aff. at ¶¶ 14-15, 18. However, the documents in question are not in the possession, custody, or control of PSD. PSD stated as much in its response to the Subpoenas, a true and accurate copy of which is attached hereto as *Exhibit D*. Plaintiffs have presented no evidence to the contrary, nor have they made a proffer of evidence. Instead, Plaintiffs appear to take it as a given that PSD has *elected* to withhold these documents, presumably despite having them or access to them. *See* Plaintiff's Aff. at ¶¶ 14-15, 17-19.

Firstly, PSD supplied the complete employment files of Morton and Gifford in response to Subpoena I. *See Exh. D*, Response to Subpoenas, at p. 2. Plaintiffs' claim to the contrary appears to be based *entirely* on their salacious speculation that these files are incomplete. *See* Plaintiffs' Aff. at ¶ 14. Plaintiffs' paltry attempt to support this accusation assumes, without evidence or reason, that certain email attachments they identify were not *also* turned over in the Production. *See* Plaintiffs' Aff. at ¶¶ 14-15 & Exhibit B. In point of fact, they *were* produced, at PSD/PARSONS0173-PSD/PARSONS0182 and PSD/PARSONS0628-PSD/PARSONS0632. True and accurate copies of those pages, as they were produced, are attached hereto as *Exhibit E*.

By the same token, PSD accurately stated that it did not have documents where those documents have been lost. PSD will not speculate as to the possible consequences for the loss of these documents, but an adjudication of contempt should not be one of them, insofar as PSD provided a good-faith response to the Subpoenas within the seven days ordered by this Court.

### C. *PSD Is Continuing to Search for Documents Responsive to Subpoena III, Some of Which Have Been Supplemented*

As stated above, Subpoena III presents a different case. Subpoena III requested the following documents:

6

1. Regarding cameras, video, and other surveillance in the interior and exterior of the Pawtucket Learning Academy, located at 286 Main Street, Pawtucket, RI, the following:
   a. True and certified copies of all contracts, work orders, schematics, and invoices from any and all providers of surveillance system design, maintenance, installation, repair, and servicing from May 1, 2016 through the present.
   b. Schematics, diagrams or other documentation showing the location of all cameras, whether video or still, within the PLA on May 1, 2016.
   c. True a [sic] certified copies of the video tapes, camera photographs and any other surveillance footage from within the PLA on the following dates:
      1. May 1-10, 2016;
      2. June 4-7, 2016;
      3. April 7, 2017.
2. Regarding the interior of the Pawtucket Learning Academy, located at 286 Main Street, Pawtucket, RI, the following:
   a. Floor plans of the interior of the PLA on June 1, 2016;
   b. Floor plans of the interior of the PLA at present;
   c. True and certified copies of all contracts, work orders, plans, building permits, and invoices for any renovations, alterations, additions, and/or improvements performed within the PLA from June 8, 2016 through the present.

*See Exh. C*, Subpoena III at p. 4. Unlike the majority of the documents sought by the Subpoenas, Subpoena III requests documents which are, at best, at the far edge of what may otherwise be considered within the scope of discovery. In particular, Request No. 2 (in its entirety) seeks documents which may or may not be helpful to Plaintiffs, but do not appear calculated to lead to discoverable evidence. The facts of this case do not rest on, nor meaningfully rely upon, the floor plans of the PLA, in 2016 or in the present. Nor, likewise, do those facts involve the maintenance of PLA's building and physical facilities, or alterations thereto. As a result, PSD had not previously preserved and archived any responsive documents to those requests as it had at the time, which is why PSD found it impossible to locate responsive documents in time despite its best efforts to do so. PSD has continued its search for these documents through discontinued legacy systems and paper files, and will comply as fast as it can.

Finally, PSD answered Request No. 1 truthfully. PSD has searched for the contracts, work orders, schematics, and invoices relating to its security camera systems, and has been

unable to locate these. Likewise, PSD has no schematics, diagrams, or other documentation which show the locations of the security cameras inside PLA as of May 1, 2016, as requested by Request No. 1(b). Similarly, PSD has not been able to locate video taken on the dates requested in its own records—upon information and belief, these videos have been supplied by the City in its response to the PPD Subpoena.

## IV.   CONCLUSION

For the reasons stated above, this Court should deny Plaintiffs' Motion, and should not find Defendant Pawtucket School Department in contempt of its July 9 Order.

> Defendant,
> Pawtucket School Department,
> By its Attorney,
>
> */s/ William J. Conley, Jr.*
> William J. Conley, Jr., Esq. (#2149)
> 123 Dyer Street, 2nd Floor
> Providence, RI  02906
> (401) 415-9835
> (401) 415-9834 FAX
> wconley@conleylawri.com

Date: July 20, 2022

8

## CERTIFICATION OF SERVICE

I hereby certify that on the 20th day of July, 2022, I filed and served this document through the electronic filing system, and the document electronically filed and served is available for viewing and/or downloading from the United State District Court for the District of Rhode Island's Electronic Filing System.

                                                 */s/ Santiago H. Posas*