UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JANE DOE, parent and next of friend
of MARY DOE, a minor in and for her
own behalf and in their own right,

         *Plaintiffs*,

   v.

CITY OF PAWTUCKET, et. al.

         *Defendants*

C.A. No. 17-365-M-LDA

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.    I<small>NTRODUCTION</small>

Plaintiff, Mary Doe, a former student at the Pawtucket Learning Academy ("PLA"), claims to have been the victim of several incidents of sexual assault and harassment over a two (2) year period while a student at the PLA. Plaintiff filed a sixteen-count Complaint against twenty-six (26) school defendants alleging various federal and state law claims resulting from these alleged assaults/harassments. On April 16, 2019, this Court issued a decision granting Defendants' Motion to Dismiss all sixteen (16) counts. *Doe v. City of Pawtucket*, 374 F. Supp. 3d 188, 2019 U.S. Dist. LEXIS 66454 (D.R.I., Apr. 16, 2019). On appeal, the First Circuit affirmed the dismissal of all counts except Plaintiffs' claim pursuant to Title IX of the Education Amendments of 1972 (hereafter "Title IX") against the City and its school department[1] in relation to allegations occurring after May 2016. *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 7 &

---

[1] Plaintiffs' Third Amended Complaint named twenty-one (21) defendants. As Plaintiffs conceded before the First Circuit, Plaintiffs are not pursuing a Title IX claim against the individual defendants. *Doe*, 969 F.3d at 11. Thus, the sole defendant is the City of Pawtucket, by and through its school department.

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

11 (1st Cir. 2020). The matter was thus remanded to this Court on a narrowed version of Plaintiff's Title IX. *Id.* ("What remains are only Doe's Title IX claims against the City of Pawtucket and the Pawtucket School Department for damages resulting from the school's alleged deliberate indifference commencing with its reaction to the first alleged rape").

After the matter was remanded to this Court, the U.S. Supreme Court issued its decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 2022 U.S. LEXIS 2230, 142 S. Ct. 1562, 1570 (2022). In *Cummings* the U.S. Supreme Court held that emotional distress damages under anti-discriminatory legislation passed pursuant to the authority of the Spending Clause was barred. *Id*. Because Title IX is just such an anti-discriminatory legislation and the sole damages sought by Plaintiff in the instant case are emotional distress damages, Defendants now move for the entry of summary judgment and submit that pursuant to *Cummings*, Plaintiffs fail to allege a viable Title IX claim.

II.   BACKGROUND FACTS

The allegations in support of Plaintiffs' Complaint have been previously outlined by this Court and the First Circuit. See *Doe v. Pawtucket Sch. Dep't*, 969 F.3d at 5-6; *Doe v. City of Pawtucket*, 374 F. Supp. 3d 188 (D.R.I. 2019). In summary, Plaintiffs claim that in May, 2016, a 17 year old male student, A.X., joined Plaintiff Doe in the classroom and asked her repeatedly to leave with him to have sex. *Deposition of Plaintiff, Lashon Parsons (February 10, 2022) at* 31. Plaintiff Doe alleged that she left class with him and the two (2) went to the bathroom where A.X. again repeatedly asked her to have sex. *Id. at 35.* Plaintiff Doe testified that she ultimately gave in and had sex with A.X. in the school bathroom. *Id. at 31.* Plaintiff Doe alleges that the next day she was stopped by Principal Gifford and asked if she had had sex with "A.X.". *Id. at*

*Doe, et al v. Pawtucket School Department, et al*
*C.A. No. 17-00365*

*38-39*. When she responded in the affirmative, Mrs. Gifford told her to stay away from him. *Id*. at 40.

Plaintiff Doe further avers that the next month, June 2016, she was in the school after hours for extra help with math teacher, Mr. Anderson. After checking in with the school secretary as to the planned pick-up by her father, she stopped at the bathroom on her way back to class. Plaintiff Doe did not lock the door and an adult student, DeBurgo, who was not supposed to be in the school, entered and asked her to have sex with him. *Id. at 46.* Although repeatedly telling him no, Plaintiff Doe reports that he raped her. *Id. See also Third Amended Complaint,* at ¶¶ 50, 57.  On that day, DeBurgo had been previously directed to leave the building by Mrs. Gifford and/or other teachers and/or the School Resource Officer, but DeBurgo surreptitiously and unlawfully re-entered the building.  *Third Amended Complaint,* at ¶¶ 43, 50 & 53.  At approximately 3:15 or 3:20 p.m., Mrs. McLaughlin went to Mr. Anderson's room to see "how many students were there," and asked about Plaintiff. *Id*. at ¶¶ 48, 58. Mr. Anderson reported that Plaintiff Doe had "just left" and that "he thought she was going to see" Mrs. McLaughlin. *Id*. at ¶¶ 48-49.  Mrs. McLaughlin searched for and found Plaintiff with DeBurgo in the bathroom. *Id*. at ¶¶ 61-65. Mrs. McLaughlin escorted them both from the school and reported the encounter to the school principal via email before leaving for the day. The following day, "the Pawtucket Police Department, in accordance with City and School policy, interviewed" Plaintiff. *Id*. at ¶ 73. DeBurgo was subsequently convicted of rape and sexual molestation in the Providence Superior Court. *Id*. at ¶ 74.

Finally, Plaintiff alleges that a year later, in April 2017 a member of the PLA faculty, David Morton, approached Plaintiff in the school hallway while she was riding "piggy back"

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

with another student, and "smacked and grabbed her butt." *Plaintiff's Depo., at 62; Third Amended Complaint,* at ¶ 78. The Third Amended Complaint also alleges that before the incident, Defendants "had, for some time, known of incidents where Mr. Morton touched and tapped the inner thigh of three other students." *Third Amended Complaint, at ¶ 78.* Plaintiff filed a criminal complaint against the teacher, who was eventually charged with misdemeanor assault. Id.

III.  ARGUMENT

    A.  Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* It is axiomatic that this Court must view the evidence in the light most favorable to the nonmoving party. *Morrissey v. Boston Five Cents Sav. Bank, F.S.B.*, 54 F.3d 27, 31 (1st Cir. 1995). However, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The primary purpose of summary judgment is to permit the court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" on the claims being examined. *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 793-94 (1st Cir. 1992). The mandates of Rule 56(c) require entry of summary judgment "upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Thus, "[t]he moving party bears the initial burden of demonstrating a lack of a material issue of fact, which shifts the burden to the non-moving party, who then must show the trier of fact could rule in his favor with respect to each issue." *Ferro v. R.I. DOT*, 2 F. Supp. 3d 150, 156 (D.R.I. 2014) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).

  B. <u>Plaintiff is not entitled to Emotional Distress Damages under Title IX</u>

As noted, the instant matter has been remanded on narrower version of Count I of Plaintiffs' Third Amended Complaint which seeks to recover for the alleged violation of Title IX. However, after the remand by the First Circuit, the U.S. Supreme Court heard and decided *Cummings*. In *Cummings*, the Petitioner, who is deaf and blind, brought suit under the Rehabilitation Act of 1973 and the Affordable Care Act ("ACA") alleging that Respondent, Premier Rehab, discriminated against her by failing to provide an ASL interpreter during physical therapy sessions. On writ before the Supreme Court, the Court held that a plaintiff suing under the implied rights of action in the Rehabilitation Act and ACA cannot recover compensatory damages for emotional distress. *Cummings*, 2022 U.S. LEXIS 2230, 142 S. Ct. at 1576.

The Court's analysis limiting damages under the Rehabilitation Act and ACA similarly extends to prohibiting emotional distress damages under Title IX. Specifically, the *Cummings* Court first recognized that Congress had utilized its' authority under the Spending Clause to enact the Rehabilitation Act and the ACA, as well as Title VI and Title IX. *Id.*, 142 S.Ct. at 1569. According to the Court, each of these statutes prohibit recipients of federal financial assistance from discriminating against individuals. *Id.* Looking at its precedent in interpreting all four

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

statutes, including particularly Title IX, the Court noted that it had found that a private right of action for enforcement of all four (4) statutes were implied by Congress' passage of the same and that private plaintiffs may secure injunctive or monetary relief in such suits. *Id.,* 142 S.Ct. at 1568, 1569 *citing Franklin v. Gwinnett County Public Schools,* 503 U. S. 60, 72-73, 112 S. Ct. 1028(1992*) (holding that Title IX provided a damages remedy for the student).* Citing its decisions interpreting Title IX and Title VI, the Court recognized that it had nevertheless had never "describe[d] the scope of 'appropriate relief.'" *Id. citing Barnes v. Gorman*, 536 U. S. 181, 185, 122 S. Ct. 2097, (2002). The issue presented therefore was "whether another special form of damages—damages for emotional distress—may be recovered" under these Spending Clause statutes and particularly the Rehabilitation Act and the ACA. *Id.*

In concluding that emotional distress damages were not recoverable, the Court recognized that the "legitimacy of Congress' power" to enact Spending Clause legislation depends upon "whether the recipient [of federal funds] voluntarily and knowingly accepts the terms of that contract." *Id*. at 1570 citing *Barnes*, 536 U. S., at 186. As such, it followed that "a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the usual contract remedies in private suits." <u>*Id*</u>. at 1571 (emphasis in original). "The same analogy [however] similarly limits "the scope of available remedies" in actions brought to enforce Spending Clause statutes" to those allowed under contract. *Id. citing Barnes*, 536 U. S., at 187; *Gebser*, 524 U. S., at 287. The Court thus concluded that because emotional distress damages are not typically available in contract cases, see *id*. at 1571-76, a recipient of federal funds would not have had sufficient notice of its potential liability for such damages when it "'engaged in the process of deciding whether [to]

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

accept' federal dollars...." *Id*. at 1570-71 (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 2459, 165 L. Ed. 2d 526 (2006)). For this reason, the Supreme Court concluded, the plaintiff could not recover damages for the "humiliation, frustration, and emotional distress" she suffered as a result of the defendant's alleged discrimination. *Id*. at 1569 (internal citation omitted).

Although the statutes allegedly violated in *Cummings* were the Rehabilitation Act and ACA, the Supreme Court's reasoning applies as well to the other discrimination statutes passed under the Spending Clause, including Title IX. See *Id.* at 1569-70. Title IX protections, as recognized by *Cummings,* are similarly restricted by the same contractual considerations because it was also passed pursuant to Congress' authority under the Spending Clause.  *Id.* at 1569, 1570 *citing Cannon v. University of Chicago*, 441 U. S. 677, 709, 99 S. Ct. 1946, 1964 (1979) (recognizing implied cause of action under Title IX) and *Franklin*, 503 U. S., at 76, 112 S. Ct. 1028 (finding monetary damages available as a remedy for intentional violations of Title IX "(and, by extension, the other [three Spending Clause discrimination]"). A court "may presume that a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the usual contract remedies in private suits." *Id*. at 1571. Because emotional distress damages are not usually available in contract cases, *id*. at 1571-76, a recipient of federal funds would not have had sufficient notice that it would face liability for emotional distress damages when it "'engaged in the process of deciding whether [to] accept' federal dollars" under Title IX. *Id*. at 1570-71 (alteration in original) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 165 L. Ed. 2d 526 (2006)). See also *Bonnewitz v. Baylor Univ.*, No. 6:21-cv-00491-ADA-DTG, 2022 U.S. Dist.

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

LEXIS 122572, at *10 (W.D. Tex. July 12, 2022) (dismissing Title IX claim under *Cummings)*. *Cf. Doe v. Metro. Gov't & Davidson Cnty*., 35 F.4th 459, 469 n.1 (U.S. 6th Cir. 2022) (although issue not before the Court, noting *Cummings'* restriction on emotional distress damages applied to Title IX claims*). Contra Doe v. Purdue Univ.,* No. 4-18-CV-89-JEM, 2022 U.S. Dist. LEXIS 128601, at *10-11 (N.D. Ind. July 20, 2022) (denying Motion in Limine to restrict emotional distress evidence "[b]ecause *Cummings* was not a Title IX action, it does not make evidence of emotional distress or harm inadmissible in this case")

     As recognized by the Supreme Court in *Cummings,* Congress also passed Title IX legislation pursuant to its authority under Spending Clause of the Constitution. *Id.* at 1568. In fact, the Supreme Court has routinely analyzed and interpreted Title IX utilizing the same contract law analogy. See ie *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277, 118 S. Ct. 1989, 1993 (1998) ("Title IX's contractual nature has implications for the construction of the scope of available remedies"). As such, like the Rehabilitation Act and the ACA specifically addressed in *Cummings,* recipients of Title IX benefits must agree to comply with federally imposed conditions in return for federal funding. *Id*. Thus, a particular remedy is available in a Title IX action only if the recipient of the funds is "on notice" that, by accepting federal funding, it exposes itself to liability of that nature. *Id*. Under the contract analogy cited by *Cummings*, funding recipient under Title IX is similarly only on notice of those damages explicitly provided in the legislation and those remedies traditionally available in suits for breach of contract. *Id*. at 1571. See also *Bonnewitz v. Baylor Univ.*, No. 6:21-cv-00491-ADA-DTG, 2022 U.S. Dist. LEXIS 122572, at *10 (W.D. Tex. July 12, 2022). See also *Barnes v. Gorman*, 536 U.S. 181, 187, 122 S. Ct. 2097, 2101 (2002) ("funding recipient is generally on notice that it is subject . . .

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

to those remedies traditionally available in suits for breach of contract") citing *Franklin*, 503 U.S. at 76, 112 S. Ct. at 1038. As the Supreme Court held in *Cummings,* emotional distress damages are not a remedy traditionally available in a suit for breach of contract. Therefore, emotional distress damages are precluded in a claim under Title IX for the same reasons the damages are limited under the Rehabilitation Act and the ACA.

In the instant case, Plaintiff claims that she "suffered emotional distress and psychological damage, post traumatic syndrome, and other injuries as a direct and proximate result of defendant School District's deliberate indifference to her rights under Title IX." *Third Amended Complaint,* at ¶ 87. Plaintiff thus specifically limits her monetary claim for damages as a result of the alleged Title IX violations to emotional distress damages. *Id*. at Count I ("Compensatory damages for Minor Plaintiff's *emotional distress and psychological damage, post traumatic syndrome, medical expenses, loss of enjoyment and other injuries,* in the amount of Three Million Five Hundred Thousand Dollars").[2] Although Plaintiff adds "other injuries" in her request for damages, Plaintiff's Third Amended Complaint and discovery responses fail to identify any other compensable injuries beyond the emotional stress, psychological and post-

---

[2] In addition, Count I seeks punitive damages but, not only is Plaintiff not entitled to punitive damages under Title IX for the same reasons that she is barred from recovering emotional distress damages, see *Peterson v. New Eng. Inst. of Tech*., 2014 U.S. Dist. LEXIS 79734, at *14 (D.R.I. June 9, 2014) (collecting cases) ("Although the First Circuit has not yet addressed this issue, other circuits have concluded that punitive damages are not available for private actions to enforce Title IX"), but in any event punitive damages are not recoverable against a municipality, *Booker v. City of Bos*., 2000 U.S. Dist. LEXIS 18652, at *12-13 (D. Mass. Dec. 12, 2000) ("Federal courts will not impose punitive damages against municipalities absent express congressional authority allowing them to do so") citing *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 263, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981). Plaintiff had also requested affirmative relief in the form of transfer to another school. Plaintiff was placed at St. Andrew's school and has since graduated.

*Doe, et al v. Pawtucket School Department, et al*
C.A. No. 17-00365

traumatic damages cited in the Third Amended Complaint. *Bonnewitz v. Baylor Univ.,* No. 6:21-cv-00491-ADA-DTG, 2022 U.S. Dist. LEXIS 122572, at *10 (W.D. Tex. July 12, 2022) (dismissing Title IX claim under *Cummings*). As such, because Plaintiff has only claimed damages for which there is no legal relief, summary judgment in favor of Defendants should enter on Plaintiff's remaining Title IX claim. *Id.; Cummings*, 2022 U.S. LEXIS 2230, 142 S. Ct. at 1570.

IV.   CONCLUSION

For the reasons cited herein, as well as those that may be raised at hearing, Defendants respectfully move for the entry of summary judgment.

Defendants,
By its attorney,

*/s/ Marc DeSisto*
Marc DeSisto, Esq. (#2757)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on this 8th day of August 2022 and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

George P. Hovarth, Esq.
ghovarthesq@verizon.net

*/s/ Marc DeSisto*